# Richmond

COMMONWEALTH OF VIRGINIA, DEPARTMENT OF TAXATION v.
LUCKY STORES, INC.

June 11, 1976.

Record No. 750775.

Present, All the Justices.

*J. Durwood Felton, III, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for plaintiff in error.*

*Carrington Williams (Arthur P. Scibelli; Boothe, Prichard & Dudley, on brief), for defendant in error.*

COMPTON, J., delivered the opinion of the court.

This controversy concerns the methods used for income taxation of a multistate foreign corporation.

Code §§ 58-151.035 through 58-151.050 provide for allocation and apportionment of Virginia taxable income by a corporation having income from business activity which is taxable both within and without Virginia. Code § 58-151.041 requires that taxable income, excluding certain classes, of such a corporation be apportioned to Virginia by a formula which includes a property factor, a payroll factor and a sales factor. These factors represent elements of the Virginia operation as a percentage of the total operations of the corporation. The three percentages are averaged and the result is applied to the total net taxable corporate income to yield the income subject to taxation by Virginia.

If any corporation believes that the statutory method of allocation or apportionment has operated or will operate to subject it to taxation on a greater portion of its Virginia taxable income "than is reasonably attributable to business or sources within this State," it may apply to the State Department of Taxation under Code § 58-151.051 for approval to use an alternative method of allocation or apportionment. If the Department, upon such application, concludes the statutory method "is in fact inapplicable or inequitable", the Department must redetermine the taxable income by the alternative method of allocation or apportionment "as seems best calculated to assign to [Virginia] for taxation the portion of the income reasonably attributable to business and sources within the State", not exceeding the amount determined by use of the statutory rules.

Lucky Stores, Inc., a California corporation authorized to transact business in Virginia, was not permitted by the State Department of Taxation to use a separate accounting method for its Virginia operation as an alternative to the statutory three-factor method in computing its Virginia corporate income tax for the fiscal years ending January 31, 1971 (hereinafter 1970) and January 30, 1972 (hereinafter 1971). Following payment under protest of the assessments

based on the statutory formula, the taxpayer filed a petition for correction of erroneous tax assessment, Code § 58-1130, in December 1973 against the Commonwealth of Virginia, Department of Taxation, alleging the assessment and collection of the taxes were erroneous and illegal in that the use of the statutory method subjected the taxpayer to taxation on a greater portion of its income than was reasonably attributable to its Virginia activities. It further alleged the refusal of the Tax Department to permit the taxpayer to file its Virginia returns under the alternative method of allocation, i.e., separate or direct accounting, was arbitrary and capricious.

After a hearing the trial court ruled, in the March 13, 1975 order appealed from, that the "evidence before the court is clear that the denial of the alternative method did result in a tax on income not attributable to the Commonwealth of Virginia, and the court having concluded that such tax was a tax upon business income not attributable to business or sources within this state, such denial was unreasonable and arbitrary and the Petitioner is permitted to file its tax returns for the fiscal years [in question] by the alternative method." Accordingly, the taxpayer was exonerated from the payment of the assessed amounts and refunds were ordered which, including interest, totalled $39,084. We granted the Commonwealth a writ of error. Code § 58-1138.

The controversy centers around whether the taxpayer's operation in Virginia was part of a nationwide unitary business or whether the Virginia business activity was separate so that its profits and losses could be segregated for purposes of income taxation. This requires a close examination of the facts, about which there is no substantial dispute, including Lucky's method of operation.

The record shows that during the period in question the taxpayer, whose corporate headquarters was in California, operated approximately 400 stores of various types throughout the United States with total corporate income reported for federal income tax purposes in 1971 of approximately $371 million. Two department stores were located in Virginia carrying the name "MEMCO", one in Annandale which opened in August of 1970 and the other in the City of Fairfax which opened in November of 1970. Lucky operated supermarkets, discount centers and other department stores nationwide. Milk and meat processing plants, and bakeries, were operated in California and the midwest region. Three stores and a warehouse were operated in Maryland.

Administratively, Lucky's nationwide operation was divided into three regions: northern California, southern California, and a midwest region located in Illinois. The Virginia and Maryland stores were the general responsibility of a division manager located in the southern California region, who also supervised 28 stores in California. Direct supervision of the Virginia stores was by a local director of operations, one of 26 corporate employees who moved to the Virginia area from the California home office in February 1970 after Lucky decided in 1968 to enter Virginia. To supplement the home office staff, additional employees were recruited locally to operate the Virginia stores. The local director of operations remained in Virginia for two and one-half years "developing a new area" and at the time of trial was one of Lucky's nationwide directors of operations, again residing in California.

Both Virginia stores operated a supermarket and sold hardware, paint, giftware, cosmetics, health and beauty aids, toys, major and small appliances, wearing apparel and jewelry. They each had a pharmacy and a snack bar. The Fairfax store had a gasoline station and sold tires, batteries and automobile accessories. Dry cleaning, watch repairing and selling of shoes was conducted in concession departments of the stores. These concessions were staffed by non-MEMCO employees and Lucky merely occupied a landlord-tenant relationship with the concessionaires except that Lucky "demanded of them that they would pursue the policies that [Lucky] had laid down."

Lucky's merchandising concept sought to produce a "one-stop shopping center . . . within one roof". The physical properties and the personnel structure were both organized to yield an "autonomous" and "self-sustaining unit". Routine daily decisions were made at the local level. Food was purchased locally from a wholesale cooperative located in Virginia and "store-door vendors", which sold bread and beverages. No food supplies were bought in Virginia from Lucky or its affiliates. Major appliances, hardware, paint, and patio materials were purchased from local vendors. The appliances were lodged in Lucky's Maryland warehouse for distribution to the Virginia and Maryland stores. Pricing of the merchandise, except apparel, was done locally. Milk, meat and bakery goods manufactured by Lucky were not used in the Virginia stores.

Apparel sold in Virginia was purchased and priced in New York City by a staff of Lucky's buyers, who served the company nation-

wide. The apparel was shipped to Virginia where it comprised from ten to twenty percent of Lucky's gross Virginia sales during the period in question.

Invoices for all local purchases of goods sold in Virginia were forwarded to California for accounting and for payment. Sales records were kept locally and transmitted to California. Profits from the Virginia stores went to the corporate treasury in California and expenses which exceeded profits in Virginia were paid by Lucky from California. Daily payroll records were kept locally, but compensation was set in California and payment of Virginia employees was controlled by the corporate headquarters. Lucky did not advertise nationally but artwork for the local advertising was done in California.

Lucky's controller testified the separate, or direct, accounting method which Lucky utilized accounted for each of its stores "individually as a separate profit center" in order to "arrive at the total operating results of a particular store or group of stores." Lucky initially filed its 1970 corporate income tax return on the separate accounting basis showing a net loss of $240,455 for its Virginia operations as compared with a net profit of $248,722 computed under the statutory three-factor method. For 1971 Lucky also prepared its return using the separate accounting method showing a net income subject to Virginia taxation of $135,869 as compared with a net income of $496,076 computed according to the statutory method.

At trial Lucky submitted a schedule of direct and allocated items from the profit and loss statements of the Virginia stores using the separate accounting method. This schedule showed that all items of income and expense were directly attributable to the Virginia stores, except General and Administrative Expenses amounting to $169,734 in 1970 and $376,161 in 1971 which were allocated to Lucky's Virginia activities on the basis of gross sales. Lucky's controller described this item:

"The general and administrative expenses are those that are incurred elsewhere than in a store, and those expenses are essentially the costs of operating the central office and the other administrative types of costs that are incurred in the various regions and in the corporate office. They are allocated to the stores in proportion to the sales of the stores. They are uniformly allocated throughout the company on that same basis without any regard to what the resulting amount is that gets charged to a store."

A number of items in the schedule of direct and allocated items contained computations which differed from those in a similar schedule for 1970 submitted to the State Tax Commissioner almost two years prior to trial.

During his testimony, the Commissioner explained that in administering requests for use of an alternative method of apportionment suggested by a taxpayer, the State Tax Department, proceeding under Code § 58-151.051 to ascertain whether the statutory method is "in fact inapplicable or inequitable", had an established policy it followed in making such determination. Such policy was in force during 1970 and had been explained in a Department Corporate Income Tax Circular published December 15, 1971, as follows:

> "A request for permission to use an alternative method of allocation and apportionment shall be accompanied by data sufficient to show either:
>
> "(1) That the statutory method is in fact inapplicable because it produces an unconstitutional result under the particular facts and circumstances of the taxpayer's situation; or
>
> "(2) That the statutory method is in fact inequitable because:
>
> > "(a) It results in double taxation of the income, or a class of income, of the taxpayer; and
> > "(b) The inequity is attributable to Virginia, rather than to the fact that some other state has a unique method of allocation and apportionment."

The Commissioner stated that, applying the foregoing criteria to these facts, he decided the statutory three-factor method was not inapplicable or inequitable in this case. One important factor to be considered, the Commissioner testified, was that Lucky operated a unitary business, which he defined as one involving mutual dependency between the parent and the local operation, having the same management in the same type business. He testified that use of the statutory formula did not produce an unconstitutional result "because we were not pulling in income that some other state could tax."

The Commonwealth's witnesses criticized Lucky's allocations for general and administrative expenses, stating they were arbitrary, inaccurate, and without sufficient documentation. A certified public accountant, who was a Tax Department employee charged with

examining returns of multistate corporations, testified for the Commonwealth that he could not say from an accounting standpoint that Lucky's effort represented an accurate separate accounting method.

At the threshold, it is important to focus upon the rules of decision applicable in the trial court in a case such as this in which a petition for correction of erroneous tax assessment is filed under Code § 58-1130 alleging misapplication of Code § 58-151.051. The proceeding, of course, attacks the administrative decision of the State Tax Commissioner, who is the officer duly authorized by law to administer the tax laws of the Commonwealth. *See* Code § 58-33. Under these circumstances, the taxpayer is confronted with a presumption of validity attached to the decision of the administrator and the burden is on the taxpayer to prove that the assessment is contrary to law or that the administrator has abused his discretion and acted in an arbitrary, capricious or unreasonable manner. *Commonwealth* v. *American Radiator and Standard Sanitary Corp.*, 202 Va. 13, 18, 116 S.E.2d 44, 47-48 (1960); *Union Tanning Co.* v. *Commonwealth*, 123 Va. 610, 632-33, 96 S.E. 780, 786-87 (1918). The evidence must be sufficiently strong to "satisfy" the trial court that the taxpayer was erroneously assessed. Code § 58-1134.

We must also place the statutory scheme in proper perspective. The corporate income taxpayer under Code § 58-151.051 (§ 58-132 during 1970 and 1971) has no absolute *right* to use an alternative method of allocation and apportionment. The statute mandates use of the three-factor formula method, Code § 58-151.041 (§ 58-131.8 during 1970 and 1971) and use of that method is the rule and, as the name implies, use of an alternative method is the exception. Moreover, an alternative method may be used *only* if in the exercise of a sound discretion the Tax Commissioner concludes that the three-factor formula "is in fact inapplicable or inequitable". The Commissioner, in Corporate Income Tax Circular No. 1, *supra*, has interpreted the foregoing statutory language to mean that the three-factor formula method is in fact "inapplicable" if it produces "an unconstitutional result" and is in fact "inequitable" if it "results in double taxation of the income" of the taxpayer and "the inequity is attributable to Virginia" rather than to another "unique" method used in some other state.

So we turn to the merits of this controversy against the foregoing background. We must determine the basic questions whether the Commissioner has misapplied the law and whether he has abused

his discretion or acted unreasonably, arbitrarily or capriciously. Intertwined with these questions is the decision whether Lucky's Virginia activities are part of a unitary business.

We hold that the operation of Lucky in Virginia was part of a unitary business. The importance of such a determination is that use of a separate accounting method is incompatible with proper, accurate and efficient taxation of a multistate corporation conducting a unitary business. *Western Auto Supply Co.* v. *Commissioner*, 245 Minn. 346, 359, 71 N.W.2d 797, 806 (1955).

> "A multi-state business is unitary when the operations conducted in one state benefit and are benefited by the operations conducted in another state or states. The essential test to be applied is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such relationship, the business is unitary. Stated another way, the test is whether a business' various parts are interdependent and of mutual benefit so as to form one business rather than several business entities and not whether the operating experience of the parts is the same in all places. Various portions of a business may be carried on exclusively in different states without destroying its unitary character if the integral parts are of mutual benefit to one another." *Crawford Manufacturing Co.* v. *State Commission of Revenue and Taxation*, 180 Kan. 352, 359, 304 P.2d 504, 510-11 (1956) (citations omitted).

The undisputed facts in this case demonstrate that Lucky's operation within Virginia in 1970 and 1971 was "dependent upon" and was "contributory to" the operation of Lucky outside Virginia. There was unity of ownership and management, with local decisions on routine matters, of necessity, being made in Virginia remote from corporate headquarters in California. The "new area" in Virginia was established by a team of trained personnel sent from corporate headquarters led by an executive who remained on the local scene several years and then returned to the home office. Apparel sold in Virginia, which constituted as much as twenty percent of Lucky's gross Virginia sales, was purchased and priced by a central corporate staff based in New York. Payment for local purchases of goods sold was made from California. Wages of local personnel were paid from California. Daily sales records kept locally were transmitted to the West Coast. Local profits became corporate profits and local losses

were underwritten by the parent. It is true, as Lucky argues, that many portions of its business were carried out locally as a part of its concept of autonomous merchandising and that many profit producing activities were shown to be directly attributable to Virginia. Nevertheless, Virginia's operation was an integral part of the business activity of the corporation, these parts being of mutual benefit to one another and mutually dependent on each other. *See Butler Brothers v. McColgan,* 315 U.S. 501 (1942); *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Commission,* 266 U.S. 271 (1924); *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113 (1920).

■ As we now examine the Commissioner's exercise of his discretion and his application of the law, the questions concern the alleged unconstitutional application of the statutory formula to Lucky. Lucky does not contend that double taxation has resulted. Lucky's argument presents the issue: Does use of the three-factor formula method produce a tax on income not reasonably attributable to business in Virginia? Stated another way, does the evidence show Virginia has "reached out" and taxed Lucky's income earned elsewhere? The answer to both questions is in the negative.

The main thrust of Lucky's effort to demonstrate that use of the statutory formula produced a tax on income not reasonably attributable to business in Virginia was the attempt to show that Virginia's share of Lucky's taxable income under the statutory formula exceeded that resulting from separate accounting. Such a showing is insufficient to prove Virginia has "reached out" to tax income earned elsewhere. Moreover, the allocation by Lucky of general and administrative costs to Virginia under its separate accounting was a major factor in the resulting disparity between the dollar amount of income produced by the two methods. But no attempt was made by Lucky to dissect the components of this item and to determine more precisely the actual cost to Lucky of each item and the amount of such cost reasonably attributable to the Virginia activity. Such procedure was an effort to assign arbitrarily a large expense item to the Virginia operation without relating it to the actual cost incurred in Virginia.

In determining the constitutional validity of the statutory taxing formula, we must compare the percentage of total taxable income produced by the formula in question with the percentage of total taxable income produced by the taxpayer's proposed method. Unless a gross disparity in percentages results, the statutory formula must be upheld. Of lesser constitutional significance is the comparison

urged by Lucky, that is, the difference in dollar amounts between competing methods. That difference is a "swing" of $500,000 when the 1970 statutory net profit of about $250,000 is compared with the separate accounting net loss of about $250,000 and a "swing" of $264,131 when the 1971 statutory income of approximately $400,000 is compared with the separate accounting figure of $135,869.

Illustrative of the importance of percentage comparisons is *Butler Brothers, supra,* in which the United States Supreme Court reviewed a California statute imposing a franchise tax measured by net income. The Illinois taxpayer with its headquarters in Chicago was engaged in the wholesale merchandising business. It had wholesale distributing houses in seven states, including one in San Francisco. Each of its houses maintained stocks of goods, served a separate territory, had its own sales force, handled its own sales and all solicitations, credit and collection arrangements and kept its own books of account. All receipts from sales in California were credited to the San Francisco outlet. The taxpayer maintained a central buying division through which all goods for resale were ordered (the only material factual difference from the case at bar because here only apparel was purchased by a corporate staff). The taxing statute was a property, payroll and sales three-factor statute and by its application 8.137 percent, or $93,500, of a profit of $1,149,677 was allocated to California. The taxpayer, using separate accounting, claimed it had a loss of $83,000 attributable to its California activities after it allocated $100,091 of home office expense to the San Francisco house and emphasized that use of the statutory formula converted the loss to a gain, the difference being about $175,000. The taxpayer claimed the statutory method reached income earned outside California and was unconstitutional. The Court disagreed saying:

> "One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extra-territorial values being taxed.
>
>       \*      \*      \*
>
> "It is true that appellant's separate accounting system for its San Francisco branch attributed no net income to California. But we need not impeach the integrity of that accounting system to say that it does not prove appellant's assertion that extra-territorial values are being taxed. Accounting practices for income statements may vary considerably according to the problem at hand. Sanders, Hatfield

& Moore, A Statement of Accounting Principles (1938), p. 26. A particular accounting system, though useful or necessary as a business aid, may not fit the different requirements when a State seeks to tax values created by business within its borders. [Citation omitted] That may be due to the fact, as stated by Mr. Justice Brandeis in *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113, 121, that a State in attempting to place upon a business extending into several States 'its fair share of the burden of taxation' is 'faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders.' Furthermore, the particular system used may not reveal the facts basic to the State's determination.

\*     \*     \*

"At least since *Adams Express Co.* v. *Ohio,* 165 U.S. 194, this Court has recognized that unity of use and management of a business which is scattered through several States may be considered when a State attempts to impose a tax on an apportionment basis. . . ." 315 U.S. at 507-08.

Under the evidence Lucky's Virginia taxable income for 1970 computed according to the statutory formula was .646 percent of Lucky's total taxable income for federal purposes; for 1971 it was less than 1.312 percent of such income. Lucky's computation produced a net loss for 1970 and a Virginia tax on approximately .36 percent of its total taxable income for 1971.\* Therefore, in neither year did the statutory formula produce a difference of as much as one percent of Lucky's total income. We, therefore, conclude that the application of the statutory method in this case has not produced an unconstitutional result. *See generally Bass, Ratcliff & Gretton, Ltd., supra; Underwood Typewriter Co., supra. Cf. Hans Rees' Sons, Inc.* v. *North Carolina,* 283 U.S. 123 (1931).

For these reasons we hold the Commissioner has not misapplied the law nor has he abused his discretion nor has he acted arbitrarily or capriciously in requiring Lucky to use the statutory three-factor method. Furthermore, and according the required weight to the construction of a statute by a state official charged with its administration, *Commonwealth* v. *Progressive Community Club,* 215 Va. 732,

---

\*This percentage is derived by dividing Lucky's 1971 total taxable income of $37,798,115 as reported on its federal income tax return into its separate accounting Virginia taxable income of $135,869.

739, 213 S.E.2d 759, 763 (1975), we find the interpretation stated in Corporate Tax Circular No. 1 to be reasonable and rational.

Consequently, the judgment of the trial court will be reversed, the petition for correction of erroneous tax assessment will be denied, and the proceeding dismissed.

*Reversed and dismissed.*