Present:  All the Justices

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF TAXATION

v. Record No. 980824  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        February 26, 1999
DELTA AIR LINES, INC.

            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                      Paul F. Sheridan, Judge


     Delta Air Lines, Inc. (Delta), is a corporation

organized and existing under laws of the State of Delaware.

Although Delta's principal place of business is in Atlanta,

Georgia, Delta is qualified to do business in the

Commonwealth of Virginia.  Delta's business activities in

Virginia include the carriage of persons and property on

aircraft that land at and depart from airports situated in

the Commonwealth.  Delta also flies aircraft over Virginia

that do not take-off from or land at any airports located

within the Commonwealth.  These flights are known as

"overflights" and are the subject of this appeal.

     Delta's overflights neither use nor have contact with

any ground facilities or services in Virginia, including

officials or agencies of the Commonwealth.  All

communications with aircraft during overflights are

conducted either by the air traffic controllers of the

Federal Aviation Administration or by licensed dispatchers

at Delta's operations control center.  In short, Delta does not avail itself of any benefit provided in the Commonwealth during its overflights.

The primary dispositive issue in this appeal is whether the Commonwealth of Virginia, Department of Taxation (the Department), can include Delta's overflight miles in the numerator of the formula used to determine Delta's Virginia corporate income tax liability.  This issue requires an analysis of whether Delta's overflights constitute business activities "in the Commonwealth" pursuant to Code §§ 58.1-409, -410, -414, and -416.  Because these overflights occur "over the Commonwealth" rather than "in the Commonwealth," we will affirm the judgment of the circuit court in favor of Delta on this issue.

We also address the question whether the circuit court erred by finding that Delta's application to correct an erroneous tax assessment for two tax years was not timely filed pursuant to Code § 58.1-1825.  We will reverse the judgment of the circuit court on this issue because we conclude that the applicable statute of limitations commenced to run from the date that the Department mailed or delivered the second "Notice of Assessment" to Delta.

I.

2

For the tax years ending June 30, 1987, June 30, 1988, June 30, 1989, and June 30, 1990, Delta used a three-factor method to apportion its income for the purpose of determining its Virginia income tax liability. See Code § 58.1-408. The three factors used were a property factor, payroll factor, and sales factor. Only the formula for calculating the property and sales factors is at issue in this appeal.

The property factor's numerator included the value of Delta's property utilized in Virginia: (1) ground property such as baggage carts, tugs, and other similar equipment; and (2) flight property, i.e., Delta's aircraft. The denominator consisted of the value of Delta's property everywhere. Delta used a mileage formula to determine the value of the aircraft to be included in the property factor. The numerator of the mileage formula was comprised of the miles traveled by Delta's aircraft from Virginia's border to an arrival airport located in Virginia and the miles traveled from a departure airport located in Virginia to the Commonwealth's border. Delta did not include the overflight miles in the numerator of the mileage formula. The denominator contained miles flown by Delta's aircraft everywhere. To compute the sales factor, Delta used the

3

same mileage formula to determine passenger and cargo revenue.

Delta used this method to determine its Virginia income tax liability not only for the four tax years involved in this appeal but also for prior tax years. In fact, the Department audited Delta for the tax years ending June 30, 1983, June 30, 1984, and June 30, 1985. As a result of that audit, the Department became aware of the fact that Delta did not include its overflight miles in the numerator of the mileage formula that it used to calculate the property and sales factors, but the Department did not propose any change in Delta's apportionment method. However, after the Department audited Delta for the tax years ending June 30, 1987, and June 30, 1988, the Department issued an audit report in which it included Delta's overflight miles in the numerator of the mileage formula, thereby increasing the amount of Delta's income tax liability.[1]

_____

[1] The Department has not promulgated any regulations regarding overflight miles. However, in an issue paper titled "Apportionment of Airline Income," dated September 8, 1989, the Department acknowledged that there is no statutory formula specifically applicable to the airline industry and that the airline industry is, therefore, subject to the three-factor formula. The Department also stated in the paper that statutory authority allows the Department to use an alternative method of apportioning

On October 25, 1989, the Department issued a "Notice of Assessment" to Delta for additional income tax due for each of those tax years.  In accordance with Code § 58.1-1821, Delta protested the assessments.  In a letter dated September 21, 1990, the Tax Commissioner concluded that the assessments were "correct and . . . now due and payable," and advised Delta that it would receive an updated bill reflecting accrued interest.  Public Document Number (P.D. No.) 90-173.  The Tax Commissioner also informed Delta that the Department had previously addressed the issue concerning overflight miles in P.D. No. 90-158.

On October 24, 1990, the Department sent Delta two additional documents for the tax years ending June 30, 1987, and June 30, 1988.  Each one of those documents was titled "Notice of Assessment" and listed the "Date of Assessment" as "10-25-89 AS OF 10-24-90."  The total amount due and payable in each "Notice of Assessment" was the sum of the corporate income tax assessed in each of the October 1989 notices plus accrued interest.  At the bottom of each October 1990 "Notice of Assessment," the Department added the words "Updated Bill."

_____

income only when a corporation requests such a method, the statutory method is inequitable, and the tax under the

Subsequent to receiving the second "Notice[s] of Assessment," Delta filed another protest. The Tax Commissioner responded to the protest on March 19, 1991, in P.D. No. 91-41, and again upheld the validity of the assessments. In that response, the Tax Commissioner did not indicate that the October 24, 1990 notices were not to be construed as "Notice[s] of Assessment."

On February 21, 1991, the Department sent Delta a "Consolidated Bill Statement" reflecting the total amount of assessed taxes due and owing for the tax years ending June 30, 1987, and June 30, 1988, plus accrued interest. On May 6, 1991, Delta paid $759,202 to the Department under protest. Delta then filed an application to correct an erroneous tax assessment in the circuit court on October 22, 1993.

The Department also audited Delta's corporate income tax returns for the tax years ending June 30, 1989, and June 30, 1990. On September 16, 1992, the Department issued "Notice[s] of Assessment" to Delta for additional income taxes due for those two years based on the Department's inclusion of overflight miles in the numerator of the mileage formula. In a letter dated December 14,

_____

alternative method is lower than the tax under the

6

1992, Delta protested the assessments contained in the September 1992 notices.  On February 25, 1993, the Tax Commissioner, in P.D. No. 93-38, upheld the legality of the assessments.  Delta then paid $798,505 to the Department on March 24, 1993.  That figure represented the amount of the additional income taxes plus accrued interest for the tax years ending June 30, 1989, and June 30, 1990.  Thereafter, Delta amended its application to correct an erroneous tax assessment to include the 1989 and 1990 tax years.

After a bench trial on July 7, 1997, the circuit court, in a memorandum opinion and judgment order dated January 27, 1998, determined that Delta was not required to include its overflight miles in the numerator of the mileage formula.  Accordingly, the court held that Delta was entitled to a refund in the amount of $485,885 and $219,618, for the tax years ending June 30, 1989, and June 30, 1990, respectively, plus interest from the date of Delta's payments to the Department.  However, the court concluded that Delta's application to correct an erroneous tax assessment for the tax years ending June 30, 1987, and June 30, 1988, was time-barred.  We granted the Department this appeal and Delta's assignment of cross-error.

_____

statutory method.

II.

Because Delta derives income from business activities that it conducts both within and without the Commonwealth, Delta is required to "allocate and apportion its Virginia taxable income as provided in §§ 58.1-407 through 58.2-420." Code § 58.1-406. To effect this apportionment of income, Delta must use a three-factor method consisting of a property factor, a payroll factor, and a sales factor. Code § 58.1-408. The numerator of the property factor is the "average value of the corporation's real and tangible personal property owned and used or rented and used in the Commonwealth during the taxable year." Code § 58.1-409. The denominator "is the average value of all the corporation's real and tangible personal property . . . located everywhere." Id. "The value of movable tangible personal property used both within and without the Commonwealth shall be included in the numerator to the extent of its utilization in the Commonwealth." Code § 58.1-410. Finally, "[t]he sales factor is a fraction, the numerator of which is the total sales of the corporation in the Commonwealth during the taxable year, and the denominator of which is the total sales of the corporation everywhere during the taxable year . . . ." Code § 58.1-414. Sales "are in the Commonwealth if . . .

8

[t]he income-producing activity is performed in the Commonwealth . . . ."  Code § 58.1-416(1).

The issue in this case involves the meaning of the phrase "in the Commonwealth" as used in these statutes. Since the Department is charged with the responsibility of administering and enforcing the tax laws of the Commonwealth under Code § 58.1-202, its interpretation of a statute is entitled to great weight.  Webster Brick Co., Inc. v. Dep't of Taxation, 219 Va. 81, 84-85, 245 S.E.2d 252, 255 (1978).  The Department contends that the phrase "in the Commonwealth" encompasses overflights and that the circuit court erred by not accepting its interpretation of the phrase.  The Department also points out that its tax assessments are presumed correct and that "the burden is on the taxpayer to prove that the assessment is contrary to law or that the administrator has abused his discretion and acted in an arbitrary, capricious or unreasonable manner." Commonwealth, Dep't of Taxation v. Lucky Stores, Inc., 217 Va. 121, 127, 225 S.E.2d 870, 874 (1976).

The circuit court found that the phrase "in the Commonwealth" is unambiguous, and we agree.  When a statute, as written, is clear on its face, this Court will look no further than the plain meaning of the statute's words.  City of Winchester v. American Woodmark Corp., 250

9

Va. 451, 457, 464 S.E.2d 148, 152 (1995).  The phrase "in the Commonwealth" is not synonymous or interchangeable with the phrase "over the Commonwealth."  "The preposition in is simply not the same as the preposition over."  Republic Airlines, Inc. v. Wisconsin Dep't of Revenue, 464 N.W.2d 62, 66 (Wis. Ct. App. 1990); see also Northwest Airlines, Inc. v. State Tax Appeal Bd., 720 P.2d 676, 678 (Mont. 1986).

Indeed, the General Assembly has made such a distinction between the words "in" and "over" in other statutes.  For example, a pilot can arrest any person "who interferes with . . . the operation of the aircraft in flight over the territory of this Commonwealth or to a destination within this Commonwealth."  Code § 5.1-20.  (Emphasis added.)  Similarly, Code § 4.1-209(1)(d) authorizes the issuance of licenses to sell beer and wine in aircraft while in transit "anywhere in or over the Commonwealth."[2]  (Emphasis added.)

---

[2] Other examples include Code § 5.1-17, which makes it unlawful for a person to hunt "during such time as such person is in flight in an aircraft in the airspace over the lands or waters of this Commonwealth," and Code § 5.1-37, which refers to airports and other air navigation facilities "in, over and upon any public waters of this Commonwealth."

"We . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute."  Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).  Accordingly, we conclude that the plain meaning of the phrase "in the Commonwealth" as used in Code §§ 58.1-409, -410, -414, and -416 does not include Delta's overflights since, during such flights, Delta's aircraft neither land at nor depart from an airport situated in Virginia and Delta does not utilize any benefit or service provided in the Commonwealth.

This conclusion does not, however, resolve this appeal.  The circuit court found that the Department will allow an airline to apportion its income by utilizing a formula based on either mileage or departures.[3]  Since Delta

_____
[3] In P.D. 90-158 and 93-38, the Department stated that use of a formula based on departures was an acceptable alternative to a method utilizing mileage.  However, in its September 1989 issue paper, the Department expressed the following concerns with regard to a departures method:

> [T]he use of a departure factor would be a significant change in policy from the department's historic use and acceptance of mileage factors in one form or another. . . .  In view of the anticipated reaction of the airline industry[,] . . . it is recommended that a regulation project be initiated to formally propose the use of departures for airline property and sales

11

has elected to use the mileage formula and has not disputed the legality of the departures method, the Department asserts that Delta cannot contest the Department's inclusion of overflight miles in the numerator of the mileage formula.  We find no merit in the Department's position.

Delta is not challenging the validity of a forumla to apportion income based on mileage.  Instead, it is contesting the Department's application of that formula in which the Department included overflight miles in the numerator of the fraction used to calculate the property and sales factors.  If Delta were precluded from challenging the validity of the Department's methodology just because it has elected to use a mileage formula, the legality of the Department's present position would continually evade judicial review.  Cf. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603 (1982) ("[J]urisdiction is not necessarily defeated . . . if the underlying dispute . . . is one 'capable of repetition, yet

---

factors so that the airline industry would have the opportunity to make its views known under the Administrative Process Act.

The Department has not yet promulgated any regulations regarding the use of a departures method for the apportionment of income by the airline industry.

12

evading review.'" (quoting <u>Nebraska Press Assn. v. Stuart</u>, 427 U.S. 539, 546 (1976))).  Moreover, for the tax years at issue in this case, Delta used the method that it had previously employed, and the Department had accepted in prior audits, to determine Delta's Virginia income tax liability.  The Department did not advise Delta of its new position with regard to taxing overflights until it issued the October 1989 audit report.  Thus, we conclude that Delta is not estopped from challenging the Department's methodology and assessment of additional income taxes.

Finally, the Department assigns error to the remedy that the circuit court employed after finding in favor of Delta.  The Department asserts that the proper remedy would have been to calculate Delta's Virginia income tax liability by using the alternative departures formula.  However, the Department did not request that the circuit court adopt this remedy.  The only issue before the court was whether Delta's overflight miles should be included in the numerator of the mileage formula used to calculate the property and sales factors.  Moreover, the record is devoid of evidence with regard to the amount of Delta's tax liability if a departures method were utilized.  Thus, as authorized in Code § 58.1-1826, the circuit court correctly ordered a refund of taxes to Delta.

13

We now address Delta's assignment of cross-error. Delta contends that the circuit court erred in determining that Delta's application to correct an erroneous tax assessment was not timely filed with regard to the tax years ending June 30, 1987, and June 30, 1988. Delta acknowledges that the applicable limitation period for filing such an application for relief is "three years from the date such assessment is made." Code § 58.1-1825. The circuit court held that the three years started running on October 25, 1989, the date of the first notices sent by the Department to Delta for these two tax years. However, Delta contends that the three years should have been computed from October 24, 1990, the date of the second "Notice[s] of Assessment."

The term "assessment" is defined in Code § 58.1-1820(2) to

> include a written assessment made pursuant to notice by the Department of Taxation . . . . Assessments made by the Department of Taxation shall be deemed to be made when a written notice of assessment is delivered to the taxpayer by an employee of the Department of Taxation, or mailed to the taxpayer at his last known address.

The Department has further addressed the terms "assessment" and "Notice of Assessment" in the following portion of a definitional regulation:

14

1. When referring to taxes administered by the Department, the terms "assess" and "assessment" mean the act of determining that a tax (or additional tax) is due and the amount of such tax. An assessment may be made by the Department or by the taxpayer (self-assessment).

2. When an assessment is made by the Department, a written notice of the assessment must be delivered to the taxpayer by an employee of the Department or mailed to the taxpayer at his last known address. The date that such notice is mailed or delivered is the date of the assessment for the purpose of any limitations on the time in which administrative and judicial remedies are available and for any other administrative purposes.

3. The written notice of an assessment made by the Department is made on a form clearly labeled "Notice of Assessment" which sets forth the date of the assessment, amount of assessment, the tax type, taxable period and taxpayer. Subsequent statements which merely report payments and additional accrued interest are not assessments or notices of another assessment. An assessment may be preceded by correspondence proposing adjustments to a filed return based on an audit or other information received by the Department. Such correspondence is not an assessment but is intended to provide taxpayers an opportunity to correct any errors before an assessment is made.

23 VAC 10-20-160(E).

The Department contends that the 1990 "Notice[s] of Assessment" were merely updated bills because the "Date of Assessment" was still listed as October 25, 1989, the total amount of taxes owed was the sum of the original amounts assessed in the 1989 notices plus accrued interest, the "Bill No[s]." remained the same, and the phrase "Updated

15

Bill" appeared on the face of the documents. The Department also relies upon the fact that Delta received the 1990 notices after the Department issued P.D. No. 90-173 in which it advised Delta that an updated bill would be forthcoming.

Delta, however, argues that the 1990 notices should be construed as "Notice[s] of Assessment." Delta first points to the fact that the forms used by the Department in 1990 were titled "Notice of Assessment" and were identical to the ones issued by the Department for the 1989 assessments. Additionally, Delta notes that it filed a protest within 90 days of the date of the assessments pursuant to information provided to it on the 1990 notices. The Tax Commissioner responded to that protest in P.D. No. 91-41 without asserting that the notices were not to be construed as "Notice[s] of Assessment." Finally, Delta asserts that the Department did not adopt its present position until Delta filed its application to correct an erroneous tax assessment.

This Court addressed an analogous situation in Knopp Bros., Inc. v. Dep't of Taxation, 234 Va. 383, 362 S.E.2d 897 (1987). The taxpayer in that case had received a letter from the Department, mailed on July 18, 1978, that summarized the results of an audit and contained "copies of

16

'assessments.'" Id. at 385, 362 S.E.2d at 898. After the taxpayer objected to the audit results, the Department conducted several more audits. Eventually, on October 27, 1981, the Department sent the taxpayer a "Notice of Assessment" that showed the "Date of Assessment" as April 1, 1981. Id., 362 S.E.2d at 899. In that notice, the Department included the total amount of taxes, penalty, and interest due, and advised the taxpayer that it had 90 days within which to file a written protest to the assessment. Following another audit, the taxpayer received a "Notice of Corrected Assessment" dated April 12, 1983. The taxpayer then filed an action to correct an erroneous tax assessment. Id. The trial court held that the Department made the original assessment on July 18, 1978, and that the statute of limitations began to run on that date, thus making the taxpayer's action untimely. Id. at 386, 362 S.E.2d at 899.

On appeal, we framed the issue as "whether any of the announcements of a tax due made by the department after the 1978 assessment were merely adjustments of an original assessment or were themselves original assessments which would establish a new period of limitation for filing suit." Id. Citing Code § 58.1-1820(2), we concluded that the 1981 document contained all the indicia of "a written

17

assessment made pursuant to notice." Id. at 387, 362 S.E.2d at 899. We further stated that "[t]he department's . . . contention that the document is not an assessment at all, but merely an adjustment of some original assessment made earlier, is in direct conflict with the department's description of the document made at the time it was issued." Id. Accordingly, we ruled that the action was timely filed and reversed the judgment of the trial court. Id., 362 S.E.2d at 900.

The Department contends that the decision in Knopp Bros. is not controlling primarily because the Department had sent that taxpayer several statements showing conflicting amounts due, unlike the present situation, and because 23 VAC 10-20-160(E) was not in effect when the Department made the assessment in Knopp Bros. We do not agree.

Contrary to the Department's position, we believe that 23 VAC 10-20-160(E) does not change the result in Knopp Bros. The regulation states that the Department's written notice of an assessment "is made on a form clearly labeled 'Notice of Assessment.'" It further provides that "[s]ubsequent statements which merely report payments and additional accrued interest are not assessments or notices of another assessment." The April 1981 notice that the

18

taxpayer in Knopp Bros. received was on a form labeled "Notice of Assessment" and was not merely a subsequent statement showing payments and accrued interest.

In the present case, the 1990 notices that the Department sent to Delta were on forms clearly labeled "Notice of Assessment." In fact, the forms were identical to those used by the Department when it issued the 1989 "Notice[s] of Assessments," which the Department asserts should be used to calculate when the statute of limitations began to run. Even though the 1990 notices contained the additional words "Updated Bill" and referenced the "Date of Assessment" as "10-25-89 AS OF 10-24-90," the Department did not delete the title "Notice of Assessment" and did not indicate, in any manner, that these 1990 notices were not to be construed as "Notice[s] of Assessments." Indeed, the fact that the Department responded to Delta's protest to the 1990 notices is in conflict with the Department's present position that those notices should not be treated as "Notice[s] of Assessment."

Relying on 23 VAC 10-20-160(E), the Department, nevertheless, asks us to construe the 1990 notices as merely subsequent statements reporting additional accrued interest. The Department sent such a statement to Delta on February 21, 1991, for these two tax years. That

19

document's appearance was entirely different from the "Notice of Assessment" forms used by the Department for the 1989 and 1990 notices, and, in fact, was titled "Consolidated Bill Statement."  Thus, we conclude, as we did in Knopp Bros., that the 1990 "Notice[s] of Assessment" contained "all the external decorations of 'a written assessment made pursuant to notice,' Code § 58.1-1820(2)." 234 Va. at 387, 362 S.E.2d at 899.

Pursuant to Code § 58.1-1820(2) and 23 VAC 10-20-160(E), the date that the "Notice of Assessment" is mailed or delivered to the taxpayer is the date that the assessment is made for the purpose of determining when any applicable period of limitations begins to run.  Therefore, we conclude that Delta's application to correct an erroneous tax assessment, filed on October 22, 1993, for the tax years ending June 30, 1987, and June 30, 1988, was timely filed within three years from the October 24, 1990 "Notice[s] of Assessment".

### III.

For these reasons, we will affirm the circuit court's judgment refunding taxes and interest to Delta for the tax years ending June 30, 1989, and June 30, 1990.  We will reverse and remand the judgment with respect to the determination that Delta's application to correct an

20

erroneous tax assessment for the tax years ending June 30, 1987, and June 30, 1988, was time-barred.  On remand, the circuit court shall determine the amount of refund to which Delta is entitled for those two tax years.[4]

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded.</u>

_____
    [4]  Because of our interpretation of the phrase "in the Commonwealth," we do not need to address the remaining issues raised by the Department.