PRESENT: All the Justices

LZM, INC.

OPINION BY
v.   Record No. 040779                    JUSTICE G. STEVEN AGEE
                                          January 14, 2005
VIRGINIA DEPARTMENT OF TAXATION


FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M.D. Turk, Judge


I.   FACTS AND PROCEEDINGS BELOW

Appellant, LZM, Inc. ("LZM") is in the business of leasing portable toilets and offers a pumping service to customers who lease LZM toilets.  LZM negotiates contracts for the lease and pumping services at the same time and includes all charges in a single invoice, although the rental and pumping charges are separately stated.  No toilet rental customer is required to contract for LZM's pumping services, and not all of LZM's toilet rental customers elect to contract for pumping services.  LZM charges additional fees for pumping services.

The Virginia Department of Taxation ("Department") conducted a sales tax audit of LZM for the period beginning October 1, 1996, and ending September 30, 1999.  The Department found that LZM neglected to collect and remit sales tax during that period for the amounts charged for pumping services provided in conjunction with its portable toilet rentals.  The Department assessed LZM for the deficiency, and after administratively challenging the

assessment, LZM paid the amount due, plus interest, under protest. LZM then timely filed a Bill of Complaint to recover the disputed sum.  Both parties filed motions for summary judgment.

Based upon the pleadings, a stipulation of facts, and an evidentiary hearing at which supplemental evidence regarding the operation of LZM's business was taken, the trial court denied LZM's motion for summary judgment and granted summary judgment in favor of the Department.  We awarded LZM an appeal.

LZM assigns error to (1) the trial court's application of the true object test to its portable toilet rentals because the transaction involved a lease, not a sale, and the trial court's holding the pumping service is separate and distinct from the lease of the portable toilets; (2) the trial court's finding that the statutory exemption from taxation for maintenance contracts did not apply; and (3) the trial court's findings of fact which LZM maintains were contrary to the stipulated facts, uncontradicted testimony, and admissions of the parties.[1]  For the reasons stated below, we will affirm the judgment of the trial court.

## II.  ANALYSIS

---

[1] LZM also assigns error to the trial court's application of 23 VAC 10-210-4040 to lease transactions.  This assignment of error is subsumed within its first assignment of error and duplicative, so it will not be separately addressed.

Charged with the responsibility of administering and enforcing the tax laws of the Commonwealth under Code § 58.1-202, the Department's interpretation of a tax statute is entitled to great weight. Department of Taxation v. Delta Air Lines, Inc., 257 Va. 419, 426, 513 S.E.2d 130, 133 (1999) (citation omitted). Further, "[a]ny assessment of a tax by the Department shall be deemed prima facie correct." Code § 58.1-205. See General Motors Corp. v. Department of Taxation, 268 Va. 289, 292-93, 602 S.E.2d 123, 125 (2004); Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 560-61, 554 S.E.2d 55, 59 (2001).

A presumption of validity therefore attaches to an assessment of tax, and the burden is on the taxpayer to show that such assessment was the result of "manifest error" or in "total disregard of controlling evidence." County of Mecklenburg v. Carter, 248 Va. 522, 526, 449 S.E.2d 810, 812 (1994) (citation omitted). Plainly, a court should not overturn the Department's decision unless the assessment is contrary to law, was an abuse of discretion, or was the product of arbitrary, capricious, or unreasonable behavior. Department of Taxation v. Lucky Stores, 217 Va. 121, 127, 225 S.E.2d 870, 874 (1976).

Exemptions of property from taxation are to be strictly construed against the taxpayer. Va. Const., art. X, § 6(f).

See, e.g., Department of Taxation v. Wellmore Coal, 228 Va. 149, 153-54, 320 S.E.2d 509, 511 (1984). The taxpayer has the burden of establishing that it comes within the terms of an exemption. DKM Richmond Assocs. v. City of Richmond, 249 Va. 401, 407, 457 S.E.2d 76, 80 (1995). When a tax statute is susceptible to two constructions, one granting an exemption and the other denying it, the latter construction is adopted. WTAR Radio-TV v. Commonwealth, 217 Va. 877, 879-80, 234 S.E.2d 245, 247 (1977); Winchester TV Cable Co. v. Commissioner, 216 Va. 286, 289-90, 217 S.E.2d 885, 889 (1975).

### A. Application of the true object test to lease transactions

Virginia imposes a retail sales tax on the sale or rental of tangible personal property. Code § 58.1-603. "Sale," for purposes of the tax includes "lease or rental" of tangible personal property. Code § 58.1-602. Charges for services, however, are generally exempt from the sales tax. Code § 58.1-609.5.

In the case at bar, LZM agrees that the gross proceeds of its lease fees for portable toilets are subject to sales tax, but maintains that fees received for toilet pumping services are charges for distinct services and are therefore not subject to tax. The trial court applied the true object test under 23 VAC

4

10-210-4040 and found that the pumping service charges were taxable.

The true object test is the means by which the Department determines the dominant purpose of a mixed sales and service transaction in order to determine whether the transaction is subject to sales tax as a sale of tangible personal property or whether it is a sale of services and therefore exempt from tax. The true object test was adopted by this Court in WTAR, 217 Va. at 883, 234 S.E.2d at 249, in which we acknowledged the endorsement of the test by a preponderance of authorities.

The Department promulgated regulations pursuant to the Court's adoption of the true object test, in which it explained the test as follows:

> If the object of the transaction is to secure a service and the tangible personal property which is transferred to the customer is not critical to the transaction, then the transaction may constitute an exempt service. However, if the object of the transaction is to secure the property which it produces, then the entire charge, including the charge for any services provided, is taxable.

23 VAC 10-210-4040(D) (2004) ("Regulation 4040"). LZM argues that the trial court should not have applied the true object test to the transaction in question because it involved the lease, rather than the sale, of tangible personal property.

LZM bases its argument on the fact that the term "lease" is not found in Regulation 4040 describing the true object test. It

5

asserts that the plain language of the regulations demonstrates that the Department uses a different mode of analysis for lease transactions and that the true object test should only apply to actual sales. LZM argues that 23 VAC 10-210-840 ("Regulation 840"), not Regulation 4040, applies to lease transactions.

Regulation 840 makes no mention of the true object test and states in pertinent part:

> Any person engaged in the business of leasing or renting tangible personal property to others is required to register as a dealer and to collect and pay the tax on the gross proceeds.

23 VAC 10-210-840(A) (2004). Gross proceeds are defined as "the charges made . . . for the lease or rental of tangible personal property" including "any service charges in connection with the lease of [the] property." Id. LZM maintains that because not all of its customers contract for toilet pumping services and because such charges are stated separately on its invoices, the pumping services are not "service charges in connection with the lease of [the toilets]," and therefore not taxable under Regulation 840. Id.

It is a familiar rule of statutory construction that when a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each. Ainslie v. Inman, 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003) (citation omitted).

6

Moreover, appellate courts read related statutes in pari materia in order to give, when possible, consistent meaning to the language used by the General Assembly. Industrial Dev. Auth. v. Bd. of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002). Regulation 4040 applies the true object test to transactions that include both sales and service elements. Code § 58.1-602 defines a "sale" to include "lease or rental." Since a "sale" thus includes "lease" transactions, the trial court correctly found that Regulation 4040 applies to both actual sale and lease transactions so the true object test is applicable in both instances. We find that, when construed together, no conflict exists between regulations 4040 and 840. They are not mutually exclusive and neither negates application of the true object test to a lease transaction.

Alternatively, LZM argues that even if the true object test applies to lease transactions, the test should not apply to the pumping service component because it is separate and distinct from the toilet lease. In support of its position, LZM posits the segregated billing charges on its invoices (divided between pumping and lease charges) and that the pumping service is an independent transaction not joined to the leasing of a portable toilet.

In WTAR, this Court decided whether the service involved in creating a television commercial should be taxed as part of the

final product, the commercial film.  In its billing statements, the taxpayer charged separately for the service and the film.  217 Va. at 878, 234 S.E.2d at 246.  The Court, however, applied the true object test and held that "the true object of the buyer of the advertisement was not the service per se, but the end product produced by the service."  Id. at 884; 234 S.E.2d at 249. Therefore, the service involved in making the film was taxable. Id.

LZM attempts to distinguish WTAR by arguing that "but for" the service in producing the advertisement, the end product of the commercial film would not come into existence.  By contrast, LZM avers that the end product of the leased toilet would be otherwise available and is not dependent upon the provision of the pumping service.  Under the facts of this case, however, we must disagree.

Like the film-making services in WTAR, the pumping services provided by LZM produce the true object of the transaction, a functioning portable toilet, which is the end product the customer seeks.  But for the pumping services, the portable toilet would not function properly and would therefore not be commercially viable.  Customers do not rent portable toilets for the waste removal services.

Moreover, LZM provides the pumping service only to those customers who lease its portable toilets.  The record does not reflect that LZM provides pumping services as an independent

commercial endeavor, but only as inextricably connected to the condition precedent of leasing an LZM toilet.[2]

Further, LZM charges for pumping services based upon the number of portable toilets leased and not by the amount of waste pumped. If the pumping service were a separate and distinct object of the transaction, then the price would be based on the requirements of the pumping itself. The trial court found that because all portable toilets must be pumped eventually and the charge is not regulated by the amount of waste removed, the pumping service makes the lease of portable toilets the end product or true object sought by the consumer.

As we also noted in WTAR, the taxpayer's "manner of computing the invoice" is not determinative of either the true object of the transaction or whether the service provided is truly separate and distinct from the property leased. 217 Va. at 884, 234 S.E.2d at 249. Otherwise, a taxpayer could create its own tax exemption merely by altering the printing of its invoices.

B.    The Maintenance Contract Exemption

---

[2] The record did reflect that LZM and other similar portable toilet rental companies exchange pumping services where practical, and the pumping company did charge for the pumping. For example, if LZM had several toilets in a location and a competitor had only one, LZM would pump for the competitor who would reciprocate for an LZM toilet in a similar or isolated situation. However, nothing in the record indicated this practice was anything but a practical accommodation of convenience.

Code § 58.1-609.5 exempts from application of the sales tax those maintenance contracts which provide for both repair or replacement parts and repair labor.  A maintenance contract is "any agreement whereby a person agrees to maintain or repair an item of tangible personal property over a specified period of time for a fee which is determined at the time the agreement is entered into."  23 VAC 10-210-910(A) (2004).

The trial court found that while LZM "may call [the contract which included the pumping services] a tax-exempt maintenance contract . . . [the evidence shows] that it was . . . an incidental agreement and that the main purpose of the entire transaction was for the lease of the toilet[s]."  Citing Strickland v. Sperry Rand Corp., 285 S.E.2d 1 (Ga. 1981), LZM argues that the maintenance contract exemption applies to the provision of toilet pumping services.

In Strickland, an electronic equipment rental corporation collected and remitted sales tax on its rental charges, but did not collect sales tax on maintenance charges.  Id.  Ruling on an assessed deficiency based on the maintenance charges, the Supreme Court of Georgia held that the maintenance charges were not taxable as part of the gross lease charge.  Id. at 2.  The Court found that the corporation was not liable for sales tax on its maintenance charges because the price of maintenance varied with each piece of equipment, and the cost of maintenance was based

upon a cost analysis of repair and preventive maintenance of each particular piece of equipment.  Id.

The difference between the case at bar and Strickland clearly shows that the charges for pumping services are not exempt costs under a maintenance contract.  While the electronic equipment in Strickland required maintenance only to prevent or correct a defect, the portable toilets are specifically designed to require the pumping services in conjunction with their use.  Such proper and normal use necessitates the regular removal of accumulated waste.  The pumping services do not repair or maintain the toilets in order to reduce the likelihood of a defect in the future. Rather, it is the pumping services that render the toilets useful and without which they could not be leased.

The maintenance contract exemption contemplates services in addition to those necessary to the item's immediate function.  The exemption, therefore, does not apply to the portable toilet pumping services, and we find nothing in the statute or regulations that would carve out an additional exception.

### C.  Trial Court's Findings of Fact

LZM also contends that certain of the trial court's findings were contrary to the undisputed facts.  Specifically, LZM contests the trial court's following findings as contrary to stipulated facts, uncontradicted testimony, or the admissions of the parties: (1) that "pumping service is not offered as a separate service to

11

individuals. It is only offered to a lessee of the portable toilets;" (2) that LZM "was assessed a sales and use tax...for the leasing and pumping service of portable toilets" (emphasis added); (3) that 445 toilets were leased by LZM in June 1999; and (4) that LZM charges "by the number of portable toilets leased and not by the amount of waste pumped from the toilets."

### 1. Toilet pumping as a separate service

The trial court's letter opinion does recite that LZM's "pumping service is not offered as a separate service to individuals." The trial court also noted that LZM sometimes pumps the toilets of other rental companies and charges those companies for the service. LZM's competitors provide a reciprocal service to LZM where the circumstances make it economically practical. Larry Z. Martin, LZM's representative, testified that LZM does not compete with these other companies for the toilet pumping service, nor does LZM advertise prices for pumping services. Martin testified that pumping the toilets of another company is a "respected tradition between the rental businesses" for the convenience of all toilet rental businesses. Essentially, the trial court found, as we noted in the discussion of LZM's first assignment of error, supra, that LZM was not in the business of pumping portable toilets, but did so only to make its rental business practical. That finding is supported by the record.

### 2. Assessment of tax deficiency

The trial court's letter opinion does state that LZM "was assessed a sales and use tax . . . for the leasing and pumping service of portable toilets." The court's ruling, however, is based on the true object test, which determines whether the entire transaction, i.e. both the sales and service components, is taxable. The Department's assessment against LZM was based on taxes owed "on [the] pumping of portable toilets." The trial court's misstatement of the Department's assessment did not affect the protested amount or the trial court's analysis under the true object test.

### 3. The number of toilets leased in June 1999

The trial court incorrectly states the number of toilets leased during the month of June 1999 as 445. The record shows that LZM rented 612 toilets during that period: 445 with weekly pumping service, 115 with no service at all, and 52 with extra service. This misstatement of the number of toilets rented has no bearing on the trial court's finding that the pumping service is incidental to the rental of the portable toilets and that the true object of the transaction was the procurement of the toilets. The fact remains that no pumping service was offered except upon leasing an LZM toilet.

### 4. Service charges for pumping toilets

In its letter opinion, the trial court notes that LZM "charges by the number of portable toilets leased and not by the

13

amount of waste pumped from the toilets." Martin testified that toilets without service "probably cost less" to rent than those with service, but there is nothing in the record that indicates any price differential based on the amount of waste pumped.

Even assuming that Martin's statement is correct, the trial court's finding is not contradictory. Its finding that the pumping charge does not vary by the amount of waste pumped is supported by the record.

### III. CONCLUSION

We conclude that under Code § 58.1-602 and Regulation 4040, the true object test applies to lease/service transactions as well as sales/service transactions. The trial court did not err in applying the true object test and in finding that the pumping services were inseparable from the portable toilet rentals under the facts of this case. Further, the trial court did not err in holding that the maintenance contract exemption does not apply. The trial court's misstatements did not produce a judgment that was contrary to the testimony and stipulated facts. Accordingly, we will affirm the judgment of the trial court granting summary judgment to the Department.

Affirmed.

14