Present: Lemons, C.J, Millette, Mims, McClanahan, and Powell, JJ., and Russell and Lacy, S.JJ.

THE NIELSEN COMPANY (US), LLC

OPINION BY
v. Record No. 140422      JUSTICE LEROY F. MILLETTE, JR.
                                    January 8, 2015

COUNTY BOARD OF ARLINGTON
COUNTY, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise DiMatteo Megaree, Judge

In this appeal we consider whether the Tax Commissioner employed a permissible methodology – a payroll percentage calculation – to determine the amount of certain receipts that, pursuant to Code § 58.1-3732(B)(2), may be deducted from the pool of taxable gross receipts upon which a locality may levy a business license tax.

## I.      Facts And Proceedings

The Nielsen Company (US), LLC promotes itself as "a global information and measurement company that provides clients with a comprehensive understanding of consumers and consumer behavior."  In the 2007 tax year, Claritas, Inc. was doing business in Arlington County, Virginia.  Claritas was a wholly owned subsidiary of Nielsen throughout the 2007 tax year, and continued as an independent entity until Claritas merged into Nielsen in October 2008.  For purposes of this appeal, the activities of Claritas are attributed to Nielsen.

During the 2007 tax year, Nielsen had offices in 18 states, including Virginia. Nielsen's only Virginia office was located in Arlington County. Nielsen's Arlington County office engaged in client relationship and customer support, statistical and data collection, data development, product fulfillment, and the solicitation of sales. To engage in these business activities for the 2007 tax year, Nielsen acquired a business license from Arlington County as required under the Code and Arlington County's ordinances.

In 2010, Ingrid Morroy, the Commissioner of Revenue of Arlington County, audited Nielsen for several of the previous tax years. After that audit, Commissioner Morroy issued an additional tax assessment on Nielsen for the 2007 tax year on the basis that Nielsen failed to pay sufficient tax on its business license. Nielsen took exception to Commissioner Morroy's additional assessment, and the dispute over that assessment has worked its way through multiple levels of review.

Nielsen first appealed to Commissioner Morroy herself pursuant to Code § 58.1-3703.1(A)(5)(b). In response, Commissioner Morroy issued a final determination confirming her additional assessment, subject to some modifications. Pursuant to Code § 58.1-3703.1(A)(6)(a), Nielsen then filed an appeal with the Virginia Tax Commissioner. The Tax Commissioner

2

subsequently issued an opinion in this matter, with the parties' names redacted, published as a Public Document titled PD 12-146. The Tax Commissioner held that Commissioner Morroy used an incorrect methodology in the 2007 tax year assessment, and instead permitted a payroll percentage methodology to be used to calculate the Code § 58.1-3732(B)(2) deduction to Arlington County's tax on Nielsen's business license. The Tax Commissioner subsequently remanded the case back to the County so that Commissioner Morroy could adjust the additional assessment for the 2007 tax year in accordance with the Tax Commissioner's opinion.

It was then Arlington County's and Commissioner Morroy's turn to appeal, as they disagreed with the Tax Commissioner's payroll percentage methodology. Pursuant to Code §§ 58.1-3703.1(A)(7)(a) and 58.1-3984, Arlington County and Commissioner Morroy appealed to the Circuit Court of the County of Arlington to correct the Tax Commissioner's allegedly erroneous ruling. After a day-long bench trial, a subsequent hearing for oral arguments, and consideration of the parties' briefs and several of the Tax Commissioner's prior opinions issued as Public Documents, the circuit court issued its opinion in this matter. The court rejected the Tax Commissioner's methodology for calculating the relevant tax deduction as erroneous, contrary to law and precedent, and

3

arbitrary and capricious in its application.  The court entered a final order which memorialized that opinion, confirmed Commissioner Morroy's assessment against Nielsen for the 2007 tax year, and directed Nielsen to pay such assessment.

Nielsen timely filed a petition for appeal with this Court.  We granted three of Nielsen's assignments of error:

> 1. The trial court erred in reversing the State Tax Commissioner's decision, and reinstating the County's assessment, because the trial court misinterpreted and misapplied Code § 58.1-3732(B)(2).
>
> 2. The trial court erred in reversing the State Tax Commissioner's decision, and reinstating the County's erroneous assessment, because the trial court should have deferred to the State Tax Commissioner's interpretation of Code § 58.1-3732(B)(2).
>
> 3. The trial court erred in reversing the State Tax Commissioner's decision, and reinstating the County's erroneous assessment, because the trial court erroneously placed the burden of proof on Nielsen rather than on the County.

## II.  Discussion

### A.  Standard Of Review

Whether tax deductions properly comply with the relevant statutory provisions is a mixed question of law and fact.  See Ford Motor Credit Co. v. Chesterfield Cnty., 281 Va. 321, 333-34, 707 S.E.2d 311, 317 (2011).  "Therefore, while we give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing party, we review the trial court's application of the law to those facts

4

de novo." Bailey v. Loudoun County Sheriff's Office, 288 Va. 159, 169, 762 S.E.2d 763, 766 (2014) (internal quotation marks and citation omitted).

B.   Whether The Tax Commissioner's Interpretation Of The Relevant Statutes Was Due Deference Or Great Weight

Nielsen assigned error to the circuit court's refusal to defer to the Tax Commissioner's ruling.  We address this issue first because if the circuit court was required to defer to, or give great weight to, the Tax Commissioner's ruling, then such deference or weight would also be required on appeal.

1.   Courts Do Not Defer To Administrative Agencies When Interpreting Statutes, And Do Not Give Weight To Administrative Interpretation Of Unambiguous Statutes

The circuit court refused to defer to the Tax Commissioner on the basis that the Tax Commissioner's ruling was not supported by the statutory language of Code § 58.1-3732(B)(2). The circuit court correctly refused to defer to the Tax Commissioner, but not for the rationale stated by that court.

We recognize that our decisions have been less than clear about a distinction in terminology, as we have sometimes conflated "deference" with "weight."  See, e.g., Commonwealth v. Barker, 275 Va. 529, 536-37, 659 S.E.2d 502, 505 (2008). Indeed, courts more generally have used these terms interchangeably.  See, e.g., Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417 (1993).  However, a review of our precedent

5

underscores that we have distinguished "deference" from "weight."[1] "Deference" refers to a court's acquiescence to an agency's position without stringent, independent evaluation of the issue. See Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 441-42, 621 S.E.2d 78, 88 (2005). "Weight" refers to the degree of consideration a court will give an agency's position in the course of the court's wholly independent assessment of an issue. See Southern Spring Bed Co. v. State Corp. Comm'n, 205 Va. 272, 275, 136 S.E.2d 900, 902 (1964).

We have consistently held that courts do not defer to an agency's construction of a statute because the interpretation of statutory language always falls within a court's judicial expertise. Virginia Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 380, 757 S.E.2d 1, 5 (2014). Though a court never defers to an administrative interpretation, in certain situations a court may afford greater weight than normal to an agency's position. When "the statute is obscure or its meaning doubtful, [a court] will give great weight to and sometimes

---

[1] We are not the only court to have wrestled with this distinction. See, e.g., Public Water Supply Co. v. DiPasquale, 735 A.2d 378, 382 (Del. 1999) ("We view the standard of judicial review of agency determinations of issues of statutory construction articulated in [a previous Delaware opinion] as overly deferential and confusing. Accordingly, it is overruled. Statutory interpretation is ultimately the responsibility of the courts. A reviewing court may accord due weight, but not defer, to an agency interpretation of a statute administered by it.").

follow the interpretation which those whose duty it has been to administer it have placed upon it." Superior Steel Corp. v. Commonwealth, 147 Va. 202, 206, 136 S.E. 666, 667 (1927). But even when great weight is afforded to an administrative interpretation of a statute, such an interpretation does not bind a court in deciding the statutory issue. Webster Brick Co. v. Department of Taxation, 219 Va. 81, 84-85 & n.4, 245 S.E.2d 252, 255 & n.4 (1978). In any event, absent ambiguity, the plain language controls and the agency's interpretation is afforded no weight beyond that of a typical litigant. See Davenport v. Little-Bowser, 269 Va. 546, 555, 611 S.E.2d 366, 371 (2005).

The Department of Taxation and the Tax Commissioner administer and enforce the Commonwealth's tax laws. Code § 58.1-202; LZM, Inc. v. Virginia Dep't of Taxation, 269 Va. 105, 109, 606 S.E.2d 797, 799 (2005); Commonwealth of Virginia v. Lucky Stores, Inc., 217 Va. 121, 127, 225 S.E.2d 870, 874 (1976). Thus, their "interpretation of a tax statute is entitled to great weight" – if, of course, the statute is ambiguous. LZM, Inc., 269 Va. at 109, 606 S.E.2d at 799; see also Davenport, 269 Va. at 555, 611 S.E.2d at 371; Department of Taxation v. Delta Air Lines, Inc., 257 Va. 419, 426-27, 513 S.E.2d 130, 133-34 (1999) (rejecting the Department of Taxation's interpretation of an unambiguous tax statute).

Applying these principles to this case, the circuit court did not err in refusing to defer to the Tax Commissioner's interpretation of Code § 58.1-3732(B)(2).  A court never defers to the Tax Commissioner's interpretation of a statute.  Moreover, Code § 58.1-3732(B)(2) is unambiguous.  Thus, the Tax Commissioner's interpretation of that statute is not entitled to great weight.

2.   Courts Do Not Defer To Or Give Great Weight To An Administrative Agency's Prior Rulings

The circuit court refused to defer to the Tax Commissioner on the basis that the Tax Commissioner's ruling did not conform to the Tax Commissioner's prior rulings previously issued as Public Documents.  Once again, the circuit court was right to refuse to defer to the Tax Commissioner, but not for the particular rationale stated by that court.

For purposes of giving weight to the positions of administrative agencies, it does not matter whether an agency has been consistent in its rulings.  This is because an agency's "prior rulings and policies themselves are not entitled to great weight, unless expressed in regulations." Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 560, 554 S.E.2d 55, 59 (2001).  Indeed, the Tax Commissioner's "[r]ulings issued in conformity with [Code] § 58.1-203" are only required to be "accorded judicial notice," and "nothing

8

more."  Code § 58.1-205(3); Chesapeake Hosp., 262 Va. at 560, 554 S.E.2d at 59.  Chesapeake Hospital is particularly on point, because in that case we specifically rejected the Department of Taxation's claim that its prior rulings in Public Documents, which encompassed "the Department's long-standing administrative interpretation," were to be afforded great weight when deciding an issue addressed by those prior rulings. Id. at 556-57, 560, 554 S.E.2d at 57, 59.  Thus, the consistency or inconsistency of the Tax Commissioner's prior rulings is irrelevant, because the prior rulings themselves are not afforded great weight unless and until they are expressed in regulations.  And if prior rulings are not entitled to great weight, then a court certainly shall not defer to such rulings.

Applying these principles to this case, the circuit court did not err in refusing to defer to the Tax Commissioner's ruling in this matter simply because the Tax Commissioner had issued prior rulings pertaining to the issue.  These prior rulings are not expressed in regulations, and are therefore afforded no deference and entitled to no weight.

C.   Levying A BPOL Tax On Gross Receipts

We now turn to the statutory scheme relevant to this appeal.  A "local governing body" may require a license for certain "businesses, trades, professions, occupations[,] and callings."  Code §§ 58.1-3700; 58.1-3703(A); see also Code

9

§ 58.1-3703.1(A)(1) (setting forth when a license is required). These licenses are referred to as Business, Professional, and Occupational Licenses ("BPOL"). If such a license is required by a local governing body, it is "unlawful to engage in such business, employment[,] or profession without first obtaining the required license." Code § 58.1-3700. "The governing body of any county, city[,] or town may . . . . levy and provide for the assessment and collection of . . . license taxes . . . upon the persons, firms[,] and corporations engaged [in the licensed business, trade, profession, occupation, or calling] within the county, city[,] or town," subject to various statutory limitations. Code § 58.1-3703(A). These license taxes are referred to as BPOL Taxes.

1. Establishing The Pool Of Taxable Gross Receipts

The local governing body's ability to levy, assess, and collect BPOL Taxes is limited solely to the authority set forth in Chapter 37 of Title 58.1 of the Code. Code § 58.1-3702. Moreover, a locality's ordinances providing for the levying of a BPOL Tax must be "substantially similar" to the Code provisions governing the levying of a BPOL Tax. Code § 58.1-3703.1(A). As Code § 58.1-3703.1 sets forth the authority for a local governing body to levy a BPOL Tax, its statutory provisions are "to be construed most strongly against the government and are not to be extended beyond the clear import

10

of the language used." Commonwealth v. Carter, 198 Va. 141, 147, 92 S.E.2d 369, 373 (1956); see also, e.g., Ford Motor Credit Co., 281 Va. at 334-42, 707 S.E.2d at 318-23 (addressing Code §§ 58.1-3703.1(A)(3)(a)(4) and 58.1-3703.1(A)(3)(b)); City of Lynchburg v. English Construction Co., 277 Va. 574, 583-84, 675 S.E.2d 197, 201-02 (2009) (addressing Code § 58.1-3703.1(A)(3)(a)(1)).

A BPOL Tax may be levied on the licensed business's gross receipts. See Code § 58.1-3705. The General Assembly set forth the following "[g]eneral rule" for determining what constitutes the pool of a business's taxable gross receipts upon which the BPOL Tax may be levied:

> Whenever the [BPOL Tax is] imposed [and] measured by gross receipts, the gross receipts included in the taxable measure shall be only those gross receipts attributed to the exercise of a privilege subject to licensure at a definite place of business within this jurisdiction. In the case of activities conducted outside of a definite place of business, such as during a visit to a customer location, the gross receipts shall be attributed to the definite place of business from which such activities are initiated, directed, or controlled.

Code § 58.1-3703.1(A)(3)(a).[2]

---

[2] This provision goes on to specify how certain types of businesses – contractors, retailers, wholesalers, renters of tangible personal property, and performers of services – shall have their "situs of gross receipts . . . attributed to one or more definite places of business or offices." Code § 58.1-3703.1(A)(3)(a)(1)-(4). This portion of the Code does not apply in this appeal because Nielsen is not engaged in any of these types of businesses.

11

This general rule specifies that the pool of taxable gross receipts originates from two sources. First, the taxable gross receipts include all gross receipts that accrue at the licensed definite place of business within the licensing jurisdiction which can be attributed to the licensed business. Second, the taxable gross receipts include the gross receipts that accrue outside of the licensed definite place of business, both within and beyond the licensing jurisdiction, which can be attributed to activities that are initiated, directed, or controlled by the licensed definite place of business.

An alternative to this general rule exists. If "the licensee has more than one definite place of business and it is impractical or impossible to determine to which definite place of business gross receipts should be attributed under the general rule," the General Assembly has provided for an alternative method, apportionment, to calculate the taxable gross receipts. Code § 58.1-3703.1(A)(3)(b). Specifically, "the gross receipts of the business shall be apportioned between the definite places of businesses on the basis of payroll," so long as "some activities under the applicable general rule occurred at, or were controlled from, such definite place[s] of business." Id. Under this alternative, the business's total gross receipts among all of its definite places of business contributing to the licensed business must

12

be apportioned between those definite places of business on the basis of each respective definite place of business's percentage of the company's total payroll. Thus, under this methodology, the pool of taxable gross receipts for the definite place of business within the licensing jurisdiction will be equal to that particular definite place of business's percentage of the company's total payroll.

The facts of this case illustrate how this scheme works. Nielsen applied for a license to engage in its business within Arlington County because Nielsen "has a definite place of business in [that] jurisdiction." Code § 58.1-3703.1(A)(1).[3] During the 2007 tax year, Nielsen had a definite place of business in 18 different states with its total domestic gross receipts at $100,516,732. The parties agreed that it was impractical or impossible to determine to which definite places of business these total gross receipts could be attributed under the general rule of Code § 58.1-3703.1(A)(3)(a). Under the apportionment alternative, the taxable gross receipts for Nielsen's definite place of business in Arlington County for the 2007 tax year is equal to that definite place of business's percentage of Nielsen's total payroll during the same time

_____

[3] A "definite place of business" is "an office or a location at which occurs a regular and continuous course of dealing for thirty consecutive days or more." Code § 58.1-3700.1.

13

period.  Code § 58.1-3703.1(A)(3)(b).  For the 2007 tax year,
the payroll for Nielsen's definite place of business in
Arlington County was 23.8668 per cent of Nielsen's total
payroll.  Thus, the pool of taxable gross receipts subject to
the BPOL Tax for the 2007 tax year was 23.8668 per cent of
$100,516,732, or $23,990,127.39.

2.    Deducting Receipts From The Pool Of Taxable Gross Receipts

Once the pool of taxable gross receipts is created,
certain receipts "shall be deducted" from that pool even though
they "would otherwise be taxable."  Code § 58.1-3732(B).  These
"deduction provisions are strictly construed against the
taxpayer."  City of Lynchburg, 277 Va. at 583, 675 S.E.2d at
201.  Relevant to this appeal, the General Assembly has
provided that the following receipts are subject to deduction:

> Any receipts attributable to business conducted in
> another state or foreign country in which the
> taxpayer (or its shareholders, partners[,] or members
> in lieu of the taxpayer) is liable for an income or
> other tax based upon income.

Code § 58.1-3732(B)(2).  This provision backs out of the pool
of taxable gross receipts – which included receipts both within
and outside the licensing jurisdiction that were attributable
to the definite place of business's licensed activities under
either Code § 58.1-3703.1(A)(3)(a) or (b) – all receipts that
accrued from business in non-Virginia jurisdictions in which
the taxpayer is subject to an income-based tax liability.

14

The question implicated by this appeal is what methodology can be used to make this deduction calculation. That is, the parties dispute how a taxpayer can make a showing that gross receipts falling under the terms of Code § 58.1-3732(B)(2), and thus subject to a deduction, were captured in the pool of taxable gross receipts calculated under Code § 58.1-3703.1(A)(3)(a) or (b).

Nielsen argues that, when a taxpayer uses the payroll percentage apportionment alternative of Code § 58.1-3703.1(A)(3)(b) to calculate the pool of taxable gross receipts, that payroll percentage must also be used to determine what portion of the out of state receipts captured in that pool is attributable to business in another state. Nielsen would apply the Virginia-located definite place of business's payroll percentage to the gross receipts accrued in all foreign jurisdictions where the taxpayer is subject to an income-based tax liability, whereby the sum of which would constitute the Code § 58.1-3732(B)(2) deduction.

Conversely, Arlington County and Commissioner Morroy argue that, regardless of how the pool of taxable gross receipts was calculated under Code § 58.1-3703.1(A)(3), determining the deduction under Code § 58.1-3732(B)(2) requires the taxpayer to prove by manual accounting that the receipts attributable to business in a foreign jurisdiction where the taxpayer is

subject to an income-based tax liability were actually captured in the pool of taxable gross receipts.

We reject both positions because the Code does not require or preclude any particular methodology to calculate the deduction pursuant to Code § 58.1-3732(B)(2). This conclusion is compelled by applying familiar principles. We "construe statutes to ascertain and give effect to the intention of the General Assembly." Sheppard v. Junes, 287 Va. 397, 403, 756 S.E.2d 409, 411 (2014) (internal quotation marks omitted). Because "the General Assembly's intent is usually self-evident from the statutory language" itself, and because Code § 58.1-3732(B)(2) is neither ambiguous nor absurd, we only "appl[y] the plain meaning of the words used in the statute." Id.

The dispositive term in Code § 58.1-3732(B)(2) pertaining to methodology is "attributable." We give this undefined term "its ordinary meaning, in light of the context in which it is used." Bailey, 288 Va. at 175, 762 S.E.2d at 770 (internal quotation marks, alterations, and citation omitted). "Attribute," when used as a verb, has the ordinary meaning of "to explain as caused or brought about by" and "regard as occurring in consequence of or on account of." Webster's Third New International Dictionary 142 (1993). Thus, "attributable" as used in Code § 58.1-3732(B)(2) speaks only to cause and consequence: that receipts are subject to deduction only if

16

they are created by business in a foreign jurisdiction in which the taxpayer is subject to an income-based tax liability. That is, "attributable" does not mandate or prohibit any particular methodology to determine which receipts captured in the pool of taxable gross receipts are subject to deduction.

D.   The Tax Commissioner's Ruling On The Code § 58.1-3732(B)(2) Deduction

The Tax Commissioner held that the following analysis determines whether the Code § 58.1-3732(B)(2) deduction may be taken by a taxpayer, and, if so, how to determine what receipts are backed out from the pool of taxable gross receipts:

> 1. Ascertain whether any employees at the Virginia definite place of business participated in interstate transactions by, for example, shipping goods to customers in other states, participating with employees in other offices in transactions, etc. If there has been no participation in interstate transactions, then there is no deduction. If there has been participation, then;
>
> 2. Ascertain whether any of the interstate participation can be tied to specific receipts. If so, then those receipts are deducted; however, if payroll apportionment had to be used to assign receipts to the definite place of business, then it is very unlikely that any of those apportioned receipts can be specifically []linked to interstate transactions. If not, or if only some of the participation can be tied to specific receipts, then;
>
> 3. The payroll factor used for the Virginia definite place of business would be applied to the gross receipts assigned to definite places of business in states in which the taxpayer filed an income tax return. Note that payroll apportionment would probably be needed to assign receipts to definite places of business in other states.

17

This three step analysis for the Code § 58.1-3732(B)(2) deduction strikes a balance between the competing interests of the licensing jurisdiction and the taxpayer. The first step serves a gatekeeping function, limiting deductions to definite places of business in Virginia where employees actually participated in some interstate transactions. The second and third steps provide for alternative methodologies to calculate the deduction depending upon whether manual accounting is possible for purposes of the deduction, despite whether manual accounting or the payroll percentage apportionment method was used to create the pool of taxable gross receipts under Code § 58.1-3701.1(A)(3)(a) or (b).

The circuit court reversed the Tax Commissioner's ruling on the basis that it was contrary to law and that it was arbitrary and capricious in application. We now address Nielsen's assigned error to the circuit court's reversal.

1.    The Tax Commissioner's Ruling Is Not Contrary To Law

The circuit court reversed the Tax Commissioner's ruling in part because it was contrary to law, as it did not accord with the statutory language of Code § 58.1-3732(B)(2). However, Code § 58.1-3732(B)(2) leaves unresolved the permissible methodology for calculating the deduction. Thus, the plain and unambiguous statutory language allows for the administrative agency whose duty it is to administer and

18

enforce the tax laws – that is, the Department of Taxation and the Tax Commissioner – to decide how such a deduction may be calculated. See Elizabeth River Crossings OpCo, LLC v. Meeks, 286 Va. 286, 311, 749 S.E.2d 176, 188 (2013) ("Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms." (internal quotation marks, alterations, and citation omitted)). The Tax Commissioner's ruling to require manual accounting, or payroll apportionment in the event that manual accounting is impossible to calculate the deduction, falls within the scope of accounting methodologies permitted by Code § 58.1-3732(B)(2). The circuit court erred when it held to the contrary.

2.  The Tax Commissioner's Ruling Is Not Arbitrary And Capricious In Application

The circuit court reversed the Tax Commissioner's ruling in part because it was arbitrary and capricious in application. The court believed that the arbitrary and capricious nature of the Tax Commissioner's ruling arose from the fact that "globally applying" the payroll percentage methodology removes the "burden to prove the deduction" from the taxpayer, and fails to "provide accuracy and avoids even the semblance of scrutiny or truth." The circuit court also expressed concern

19

about the fact that "this methodology [does not] adequately account for the [amount of hours] spent in Virginia to earn out-of-state revenues."

The Tax Commissioner's ruling specified that the payroll percentage methodology may be used only if it is impossible to apply the manual accounting methodology to determine the Code § 58.1-3732(B)(2) deduction. The payroll percentage methodology, then, is not automatically applied in the deduction context so as to be applied "without [a] determining principle" or "without consideration of or regard for [the] facts[ and] circumstances." Virginia Commonwealth Univ. v. Zhuo Cheng Su, 283 Va. 446, 453, 722 S.E.2d 561, 564 (2012); Black's Law Dictionary 125 (14th ed. 2014) (defining "arbitrary").

Further, such a binary scheme in the deduction context, permitted but not required by the plain language of the Code, follows the structure of the scheme expressly set forth by the General Assembly when creating the pool of taxable gross receipts under Code § 58.1-3703.1(A)(3). The use of an estimate methodology when determining a deduction, but only when it is impossible to determine the exact figures to calculate such a deduction, is neither "contrary to . . . established rules of law" nor a mechanism permitting an assessment to be "founded on prejudice or preference rather

than on reason or fact" when that very same methodology is used to determine the initial tax to be imposed, but only when it is impractical or impossible to determine the exact figures to calculate such a tax. Black's Law Dictionary 125 (defining "arbitrary"); id. at 254 (defining "capricious"); see also Virginia Commonwealth Univ., 283 Va. at 453, 722 S.E.2d at 564. The circuit court erred when it held to the contrary.

E.    Proceedings On Remand

Because the circuit court erred in reversing the Tax Commissioner's ruling, it erred in affirming Commissioner Morroy's assessment against Nielsen for the 2007 tax year which was to be reassessed pursuant to the Tax Commissioner's ruling. We shall therefore remand this case back to the circuit court.

We note that the statutory scheme permitting appeals from the Tax Commissioner to a circuit court does not allow remand back to the Tax Commissioner or the local official who originally assessed the tax. See Code § 58.1-3703.1(A)(7). Thus, "[w]hen [this] statutory procedure is invoked, the determination of the correctness of [the] challenged assessment, as well as any grant of appropriate relief, become matters exclusively of judicial concern." Smith v. Board of Supervisors of Fairfax Cnty., 234 Va. 250, 255, 361 S.E.2d 351, 353 (1987). On remand to the circuit court, that court must grant the appropriate relief based upon the evidence before it,

21

and it may not remand the case back to the Tax Commissioner or Commissioner Morroy for such a determination. Id. Of course, the court "can exercise its discretion to determine whether additional evidence is necessary in order to make a proper determination" as to the appropriate relief. Bailey, 288 Va. at 182, 762 S.E.2d at 774 (internal quotation marks omitted).

Finally, it is important to address Nielsen's third assignment of error, as it "probably will arise upon remand." Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 203, 585 S.E.2d 557, 566 (2003). Nielsen assigned error to the court placing the burden of proof to claim the deduction upon the taxpayer, claiming that such a decision contravenes the statutory burden allocated by the General Assembly.

When a tax determination is appealed from the Tax Commissioner to a circuit court, the General Assembly has placed "the burden . . . on the party challenging the determination of the Tax Commissioner, or any part thereof, to show that the ruling of the Tax Commissioner is erroneous with respect to the part challenged." Code § 58.1-3703.1(A)(7)(a). This operates so that the party challenging the Tax Commissioner's ruling has the burden before the circuit court of showing why that ruling was erroneous. Arlington County and Commissioner Morroy, appealing the Tax Commissioner's ruling to the circuit court on the basis that the Tax Commissioner's

22

payroll percentage methodology was erroneous, bore this burden. And for the reasons we set forth in this opinion, Arlington County and Commissioner Morroy failed to satisfy that burden.

However, the Tax Commissioner's ruling did not alter the "familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) (internal quotation marks omitted).  Thus, in appealing to the circuit court to challenge the Tax Commissioner's decision, Code § 58.1-3703.1(A)(7)(a) does not shift the burden to Arlington County and Commissioner Morroy to disprove the availability or amount of the deduction Nielsen seeks under Code § 58.1-3732(B)(2).  Instead, under the Tax Commissioner's three step analysis, Nielsen continues to bear the burden before the circuit court to show that it can satisfy each step of the Tax Commissioner's analysis in order to take and correctly calculate the deduction under Code § 58.1-3732(B)(2).

### III. Conclusion

For the aforementioned reasons, we reverse the circuit court's judgment that the Tax Commissioner's ruling was erroneous, contrary to law and precedent, and arbitrary and capricious in its application.  We reverse the circuit court's

23

reversal of the Tax Commissioner's ruling in this matter and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>