COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Huff and Callins
Argued at Richmond, Virginia

**PUBLISHED**

COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF TAXATION
                                                    OPINION BY
v.      Record No. 0598-22-2        CHIEF JUDGE MARLA GRAFF DECKER
                                                    MAY 23, 2023
1887 HOLDINGS, INC. (F/K/A
  THE C.F. SAUER COMPANY)


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
D. Eugene Cheek, Sr., Judge

Flora T. Hezel, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General; Charles H. Slemp, III, Chief Deputy Attorney
General; Leslie A.T. Haley, Deputy Attorney General; Joshua N.
Lief, Senior Assistant Attorney General & Section Chief, on briefs),
for appellant.

Craig D. Bell (Robert W. Loftin; Alec V. Sauble; McGuireWoods
LLP, on brief), for appellee.

The Commonwealth of Virginia, Department of Taxation appeals the circuit court's grant

of summary judgment to 1887 Holdings, Inc. On appeal, the Department argues a taxpayer

cannot elect to use the income apportionment method allowed for manufacturing companies in

Code § 58.1-422 for the first time in an amended tax return. We hold, based on a plain reading

of the statute, that the option to elect the manufacturer's apportionment method is not limited to

original tax returns. Therefore, the circuit court did not err by granting summary judgment, and

we affirm the decision.

BACKGROUND

The material facts of this case are not in dispute. 1887 Holdings, Inc., formerly known as C.F. Sauer Company, is a Virginia corporation. In 2014 and 2015, Virginia was its principal place of business, but the company operated both inside and outside the Commonwealth.

Virginia law requires that "multistate businesses . . . apportion their income to determine the amount of their income [that] is taxable in Virginia." *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 449 (2022). The Code provides a standard formula for determining corporate income for state tax purposes. *See* Code § 58.1-408. However, manufacturers that meet certain requirements may utilize an alternative apportionment method to determine taxable income. Code § 58.1-422. This alternative method is considered advantageous for eligible taxpayer companies.[1] *See* Code § 58.1-422(C), (E).

This appeal stems from the Department's audit of the income tax returns that 1887 Holdings filed for the years 2014 and 2015. During the audit process, 1887 Holdings advised the Department that it wished to elect the manufacturer's apportionment method permitted under Code § 58.1-422. After review, the Department denied the request. It based the denial on its conclusion that a corporation cannot make such an election in an amended return. The Department assessed the 2014 and 2015 tax liabilities for 1887 Holdings using the standard apportionment method.[2]

---

[1] Under the standard apportionment method, Virginia taxable income is calculated by adding the "property factor," the "payroll factor," and "twice the sales factor," dividing that sum by four, and multiplying that quotient by income. Code § 58.1-408; *see also* Code §§ 58.1-409 (defining "property factor"); -412 (defining "payroll factor"); -414 (defining "sales factor"). Under the alternative apportionment method allowed for certain manufacturing companies, Virginia taxable income is calculated by multiplying income by the "sales factor." Code § 58.1-422(A)(3).

[2] The Department assessed 1887 Holdings with a total amount due of $706,106.12.

Challenging those tax assessments, 1887 Holdings appealed to the tax commissioner. The only issue on appeal was whether it could use amended tax returns to elect the manufacturer's apportionment method under Code § 58.1-422. The tax commissioner concluded that it could not and upheld the Department's assessments.

1887 Holdings then filed a complaint in the circuit court challenging the 2014 and 2015 tax assessments. Agreeing that the material facts were undisputed, both parties filed motions for summary judgment.

After a hearing, the circuit court concluded that 1887 Holdings was entitled to elect the manufacturer's apportionment method in an amended return. In doing so, the court noted that Code § 58.1-422 was "silent" regarding whether a taxpayer must elect the manufacturer's apportionment method in an original corporate income tax return or whether it could "make the election" in "a timely amended" return. Accordingly, the circuit court found that requiring the election to be made in "an original income tax return" would "impose a requirement not articulated by the General Assembly." The court also relied, in part, on the purpose of the manufacturer's apportionment method, "to bolster the fiscal health of the Commonwealth by promoting manufacturing jobs in Virginia." The court held that the statutory purpose of the election is achieved regardless of whether the election is made in an original or amended tax return. Based on this reasoning, the circuit court ordered the tax assessments abated, denied the Department's motion for summary judgment, and granted the summary judgment motion of 1887 Holdings.

ANALYSIS

On appeal, the Department argues that the circuit court erred by ruling that 1887 Holdings could claim the manufacturer's apportionment method for the first time in an amended

return. It contends that the circuit court's construction of Code § 58.1-422 is inconsistent with the language and purpose of the statute.

In examining this case, the Court is guided by well-established legal principles. On review, courts presume that tax assessments are correct. Code § 58.1-205(1); *accord LZM, Inc. v. Va. Dep't of Tax'n*, 269 Va. 105, 109 (2005). Even so, interpretation of a tax statute is a question of law reviewed de novo on appeal. *R.J. Reynolds*, 300 Va. at 454. The first step in interpreting a statute is to look at its language. If the statutory language "is unambiguous," the reviewing court is "bound by the plain meaning of that language." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 161 (2021) (quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 263 (2018)). This maxim controls statutory construction unless "applying the plain language would lead to an absurd result." *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016) (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)).

Turning to the statute at issue here, a company, in order to qualify for the manufacturer's apportionment method, must meet certain thresholds for the number of full-time employees and average wage.[3] Code § 58.1-422(C). If a company elects to use this alternative apportionment method, it "may not revoke the election for a period of three taxable years." Code § 58.1-422(B). If the company falls below these limits during the minimum three-year period, "the Department . . . shall assess [it] with additional taxes." Code § 58.1-422(C). Those added taxes equal the difference between what the company would have paid under the standard income apportionment method and what it paid under the alternative, and more advantageous,

---

[3] A company qualifies for the manufacturer's apportionment method only if it pays an average weekly wage to its full-time employees that is "greater than the lower of the state or local average weekly wages for the taxpayer's industry." Code § 58.1-422(B)-(C). In addition, its annual number of full-time employees cannot fall below 90% of the number it had during the year before it started taking the election. Code § 58.1-422(C).

manufacturer's apportionment method. *Id.* Further, the company must pay the interest accrued on the additional taxes. *Id.*

The straightforward issue presented here is whether a taxpayer company can elect the manufacturer's apportionment method in an amended return or whether it can do so only when filing an original return. The tax code liberally permits the filing of amended income tax returns after the filing deadline, generally allowing them within certain time periods.[4] *See* Code § 58.1-1823; *see also* 23 Va. Admin. Code § 10-20-180. Although the Code broadly permits amended returns, it does have some limitations on what elections can be made in them. For example, Code §§ 58.1-322.04(4) and -402(F) specify that elections to "recognize[]" income from certain dispositions of real property under the installment method must be "made on or before the due date prescribed by law (including extensions)." The statutory requirement that these installment elections be made on or before the due date excludes the possibility of making them in amended returns filed after the due date.

The statutory language in Code § 58.1-422 at issue here, by contrast, does not require that the election of the manufacturer's apportionment method be made on or before the due date or otherwise bar a taxpayer from electing this alternative apportionment method in an amended return. It does contain specific related limitations. For example, the statute expressly commits a taxpayer company electing the method to adhere to that choice for a period of three taxable years. Code § 58.1-422(B). It also accounts for the possibility that a company may elect to use the manufacturer's apportionment method but fail to meet the requirements over the mandatory three-year period. Code § 58.1-422(C). Notably, the statute does not address the converse

---

[4] Under certain circumstances not applicable here, the Code *requires* that taxpayer companies file amended income tax returns. *See, e.g.*, Code §§ 58.1-311 (requiring the reporting of a change in federal taxable income as reported on the federal tax return); -311.1 (requiring the reporting of a correction in the amount of income tax reported to another state); -399 (requiring the reporting of any final federal adjustment).

circumstance in which a company uses the standard apportionment method in the original return but later realizes that it meets the thresholds for the alternative manufacturer's apportionment method and wishes to make that election retroactively in an amended tax return. *See* Code § 58.1-422.

A reviewing court assumes "that the legislature chose, with care, the specific words of the statute." *Va. Elec. & Power Co.*, 300 Va. at 163 (quoting *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020)). And, "[a] court may not 'add to the words' of a statute." *Berglund Chevrolet, Inc. v. Va. Dep't of Motor Vehicles*, 71 Va. App. 747, 753 (2020) (quoting *Baker v. Commonwealth*, 278 Va. 656, 660 (2009)); *see also Commonwealth v. Amos*, 287 Va. 301, 307 (2014) ("This Court may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not actually express.'" (quoting *Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001))). Here, the plain language of Code § 58.1-422 does not prevent a company from electing to use the manufacturer's apportionment method through an amended return, and it is not the role of the reviewing court to add such a restriction.[5]

For comparison, it is useful to reference other parts of Virginia's tax code. *See generally Thomas v. Commonwealth*, 59 Va. App. 496, 500 (2012) (providing that statutes involving the same subject matter should, if possible, be construed together and harmonized). As discussed above, Code §§ 58.1-322.04(4) and -402(F) require certain elections to be "made on or before

---

[5] The parties offer different principles of statutory construction to support their positions. 1887 Holdings reminds us that statutes imposing taxes are generally construed against the Commonwealth and in favor of the taxpayer. *See Kohl's Dep't Stores, Inc. v. Va. Dep't of Tax'n*, 295 Va. 177, 187 (2018). The Department argues that provisions for exemptions, exclusions, and limitations on taxes are narrowly construed against the taxpayer. *See Forst v. Rockingham Poultry Mktg. Coop.*, 222 Va. 270, 275 (1981). It is not necessary for this Court to resolve which principle applies in this case because we do not need to look any "further than the plain meaning of the statute's words." *See Kohl's*, 295 Va. at 185 (quoting *Va. Dept. of Tax'n v. Delta Air Lines, Inc.*, 257 Va. 419, 426 (1999)).

the due date prescribed by law (including extensions) for filing" the tax return.  Code § 58.1-442(A) allows affiliated corporations to elect "to file on a separate, consolidated or combined basis."  But, it mandates that all future returns be filed "upon the same basis unless permission to change is granted by the Department."  These examples illustrate that the General Assembly knows how to limit a company's ability to make or change elections for tax purposes.  The legislature did not include language in Code § 58.1-422 limiting a company's ability to elect to use the manufacturer's apportionment method in an amended return.  *See generally AV Auto., LLC v. Gebreyessus*, ___ Va. ___, ___ n.5 (Sept. 15, 2022) ("[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." (alteration in original) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011))).  Code § 58.1-422 simply does not provide a basis to infer a legislative restriction on the ability to elect the manufacturer's apportionment in amended tax returns.

The Department suggests that this conclusion conflicts with the recapture provision as well as the provision that an election to use the manufacturer's apportionment method is irrevocable for three taxable years.  It theorizes that both components of the statute would be unnecessary if a company could make the election in an amended return, because then companies would always wait to see if they met the criteria "and then file amended returns to make the election and claim a refund."  We are unpersuaded by this argument.  The possibility that taxpayer companies will take a wait-and-see approach is not incompatible with the Code's

apportionment method provisions.[6] Consequently, the ability to make the election in an amended return is not in direct conflict with the recapture and irrevocability provisions.

Further, the Department argues that its position is supported by the statute's phrase "the original due date for filing of the income tax return." *See* Code § 58.1-422(C). That language is found in Code § 58.1-422's subsection providing that if a company elects to use the manufacturer's apportionment method but does not meet the necessary criteria for a three-year period, it will be assessed the difference between what it paid and what would have been due under the standard apportionment method, plus interest. *Id.* Such interest accrues "from the original due date for filing of the income tax return to the date of payment of such additional taxes." *Id.* The Department suggests that the fact that the statute "does not use the words 'from the original due date for filing of the income tax return, *or the amended return upon which the election was made*,'" signifies that the legislature intended to "limit the making of an election under . . . Code § 58.1-422 to an original return."

Contrary to the Department's interpretation, the imposition-of-interest provision in Code § 58.1-422(C) simply matches the general requirement to pay interest on any taxes paid after the deadline. In other words, the Department charges interest on any unpaid balance of tax. *See* Code § 58.1-455(A). Such interest accrues "from the date the tax or any unpaid balance of the tax was originally due until paid." *Id.* When the Department assesses "additional tax," it adds interest "to the amount of the deficiency . . . from the time the return was required by law to be filed until paid." *Id.* Therefore, the phrase "original due date" in Code § 58.1-422 relates to the

---

[6] Contrary to the Department's suggestion, it is not clear that a company would never choose to elect the manufacturer's apportionment method in its original tax return despite the uncertainty regarding its future ability to meet the threshold. *See generally* Robert J. Taft et al., *Investment Value—Pre- and Post- Tax Reform Act of 1986*, 4 Tax-Advantaged Securities § 2:6 (2022) ("A dollar paid to you today is more valuable to you than the dollar you will receive tomorrow. This is because today's money can be put to work . . . while tomorrow's money cannot.").

interest calculation and does not pertain to when a company must make the election to use the manufacturer's apportionment method.

The Department also urges this Court to afford weight to its interpretation of the statutory scheme because it is the agency tasked with administering the tax laws of the Commonwealth. As such, the Department claims that it has the authority to determine how the election is made. Certainly, the Department "administer[s] and enforce[s] the Commonwealth's tax laws." *Nielsen Co. (US), LLC v. Cnty. Bd. of Arlington Cnty.*, 289 Va. 79, 88 (2015); *accord* Code §§ 58.1-202; -203. Even so, it is the province of the courts to review an agency's interpretation of a statute de novo. *Berglund Chevrolet*, 71 Va. App. at 752. *See generally R.J. Reynolds*, 300 Va. at 455 ("[A] regulatory interpretation of a statute 'does not bind a court in deciding [a] statutory issue.'" (second alteration in original) (quoting *Nielsen*, 289 Va. at 88)). "Virginia courts do not delegate" the responsibility of statutory construction "to executive agencies." *Berglund Chevrolet*, 71 Va. App. at 752 (quoting *Finnerty v. Thornton Hall, Inc.*, 42 Va. App. 628, 635 (2004)). "[A]bsent ambiguity" in the statute, "the plain language controls[,] and the agency's interpretation is afforded no weight beyond that of a typical litigant." *Nielsen*, 289 Va. at 88.

It is true that "in certain situations a court may afford greater weight than normal to an agency's position." *Id.* (explaining the difference between affording weight to and deferring to an administrative interpretation). When a statute is ambiguous, "the practical construction given to a statute by public officials charged with its enforcement is entitled to great weight by the courts." *See Jones v. Commonwealth ex rel. Von Moll*, 295 Va. 497, 503 (2018) (quoting *Commonwealth v. Barker*, 275 Va. 529, 536 (2008)).

Here, however, the statute is not ambiguous. "A statute is ambiguous if 'the text can be understood in more than one way or refers to two or more things simultaneously [or] [if] the language is difficult to comprehend.'" *Eley v. Commonwealth*, 70 Va. App. 158, 164 (2019)

(alterations in original) (quoting *Blake v. Commonwealth*, 288 Va. 375, 381 (2014)). Similarly, a statute is considered ambiguous if it is "of doubtful purport, open to various interpretations, or wanting clearness or definiteness." *Kohl's Dep't Stores, Inc. v. Va. Dep't of Tax'n*, 295 Va. 177, 187 (2018) (quoting *Newberry Station Homeowners Ass'n v. Bd. of Supers.*, 285 Va. 604, 614 (2013)).

The plain language of Code § 58.1-422 simply does not prevent a taxpayer company from electing to use the manufacturer's apportionment method in a timely amended return. This omission is not ambiguous in light of the legislature's liberal acceptance of amended returns generally elsewhere in the tax code. Since the statute is not ambiguous, we do not weigh the Department's interpretation any differently than that of any other litigant.

In support of its position, the Department also cites its own guidelines.[7] As noted by the guidelines themselves, they "represent the Department's interpretation of the relevant laws" and "do not have the force and effect of . . . [a] regulation." Va. Dep't of Tax'n., Single Sales Factor Election for Manufacturers Guidelines 1 (Jan. 7, 2013); *see* Code § 2.2-4001 (defining a regulation as "having the force of law" and a "guidance document" as an agency's effort to interpret its rules or regulations (referencing Code § 2.2-4101)); *see also Va. Ret. Sys. v. Shelton*, 76 Va. App. 167, 182 (2022) (recognizing that agency guidelines "do not have the force of law" (quoting *Jackson v. W.*, 14 Va. App. 391, 399 (1992))). The Department's guidelines on this issue simply represent its interpretation of the statute and, based on the de novo standard of review, do not control our analysis. *See generally Chesapeake Hosp. Auth. v. Commonwealth*,

---

[7] The particular guideline cited provides that a manufacturing company cannot use an amended return "to change its modified apportionment method election because it will not be able to meet" the criteria for its use. Va. Dep't of Tax'n., Single Sales Factor Election for Manufacturers Guidelines 2 (Jan. 7, 2013). Based on our conclusion that the guidelines do not affect our analysis, we do not reach the question of whether the guidelines, by extension, indicate that a manufacturer cannot elect the alternative apportionment method for the first time in an amended return.

*Dep't of Tax'n*, 262 Va. 551, 560 (2001) (rejecting the Department's "bootstrapping" in an attempt to garner an "elevated level of deference" for its interpretation).

Finally, the Department suggests that the "underlying purpose of the manufacturer's apportionment method" is not achieved by the circuit court's ruling because it encourages the corporate taxpayer "to delay making the election until it has assurance that its employment and wage levels remained predominantly unchanged during the relevant tax periods." An appellate court's "highest objective" when construing a statute is to honor the legislative intent. *Kohl's Dep't Stores*, 295 Va. at 188. As already made clear, generally, the legislative intent is conveyed through the plain language of the statute. *See Jones v. Commonwealth*, 296 Va. 412, 415 (2018). The alternative apportionment method available to manufacturers under Code § 58.1-422 provides an incentive for them to increase "quality manufacturing jobs" in the Commonwealth. Code § 58.1-422(E). The statute itself sets out its purpose, noting that "job creation is essential to the continued fiscal health of the Commonwealth." *Id.*

The tax benefit under Code § 58.1-422 is received only by companies that meet the necessary criteria, whether they first apply for the benefit in an original tax return or an amended one. Ultimately, it is hard to discern an economic advantage to the Commonwealth if taxpayer companies are limited to elections in original returns. Either way, companies are eligible only if they meet the employment and wage thresholds for three years. In fact, below, the Department's counsel acknowledged that "[f]rom a financial perspective to the Commonwealth, there isn't a difference" between approaches. The circuit court correctly concluded that "[t]he purpose behind the election is achieved, and the financial and economic effects to the Commonwealth are the same, regardless of whether the election to use the manufacturer's apportionment method is made on an original or amended tax return."

Based on the unambiguous language of Code § 58.1-422, we conclude that a taxpayer company can elect the manufacturer's apportionment method in an amended return. We base our decision on the construction of the statute's plain language read in conjunction with the tax code's generally permissive approach toward amended returns.

CONCLUSION

Under Code § 58.1-422, a taxpayer company can elect to use the manufacturer's apportionment method in an amended return. Therefore, the circuit court did not err by granting summary judgment for 1887 Holdings. Accordingly, we affirm.

*Affirmed.*